# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SARAH,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>GOOGLE LLC, YOUTUBE LLC, JAMES JACKSON, also known online as "ONISION," and LUCAS JACKSON, formerly known online as "LAINEYBOT," "LAINEY" and "KAI,"<br><br>　　　　　　　　　Defendants. | Case No. 1:23–CV–00223<br><br>PLAINTIFF'S MOTION FOR LEAVE TO PROCEED USING A PSEUDONYM WITH MEMORANDUM IN SUPPORT<br><br><br><br>Honorable Hala Y. Jarbou |

Plaintiff, Sarah ("Plaintiff"), through her undersigned counsel, respectfully requests that the Court allow her to bring this action anonymously and require the Defendants to keep her surname and identity confidential throughout the pendency of the lawsuit and thereafter. The arguments in support of this motion are set out in the Memorandum in Support incorporated herein by reference.

## FACTS

This is a lawsuit for civil damages against YouTube and its parent company Google, James Jackson—known online as "Onision" (hereinafter "Onision"), and Lucas Jackson—formerly known online as "Laineybot," "Lainey," and "Kai," (hereinafter "Lucas"), under the federal statutes 18 U.S.C. § 1595, Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 2255, Civil Remedies for Personal Injuries, and related state law claims arising from Defendants' conduct.

As outlined in her complaint, Plaintiff became a huge Onision fan and by extension a fan of his spouse Lucas as well. ECF No. 1. ¶38 ("Complaint"). For two

years, Lucas flirted with and groomed Sarah. Complaint ¶40. During this time, Lucas made sexually graphic comments to Sarah, called her "jailbait," referred to her as her "girlfriend," and told her that she was "in love" with Sarah. Complaint ¶¶190–202. Soon after, Lucas and Onision invited Sarah to visit them in Washington State where they allowed her to live with them for periods of time. Complaint ¶41. During those visits, Sarah, a minor, was exposed to sexual references, physical touching of her body including her private areas, exposure to sexuality, desensitization to sexuality, and sexual commentary, amongst other grooming tactics. Complaint ¶42. After years of grooming, Onision raped Sarah after she turned eighteen. Complaint ¶43. After assaulting her, Onision began a public campaign of victim shaming in which he published numerous false statements accusing Sarah of being a "rapist" and a felon. Complaint ¶44.

Sarah was a minor during most of the time she was sex trafficked and harmed by Onision and Lucas and she continues to be harmed and harassed by them as an adult. Sarah's safety, right to privacy, and personal security outweigh the public interest in knowing her identification, particularly given the lengths she has gone to conceal her surname from public disclosure despite telling her story and revealing her first name. While Sarah is amenable to disclosing her first name on the public docket, her legitimate concerns for privacy clearly outweigh any prejudice to the Defendants or the public. Allowing Sarah to proceed anonymously with respect to her surname will alleviate these concerns. So too, some Defendants are currently aware of her surname and Plaintiff agrees to permit disclosure of her

surname to all the Defendants through her attorneys. For these reasons, Plaintiff respectfully asks this court to permit her to use the pseudonym "Sarah."

## ARGUMENT

There is a public interest in allowing society to scrutinize government functions, including open access to attend and observe both criminal and civil proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 599–600 (1980). "The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical." *Doe v. Stegall,* 653 F.2d 180 (5th Cir. 1981). Party anonymity does not inhibit the public interest to an open trial in the way that closure of a courtroom does; rather, the public can still attend and observe a trial while the plaintiffs proceed under pseudonyms, thus preserving the constitutional interest in ensuring that "[w]hat transpires in the courtroom is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947).

Although Fed. R. Civ. P. 10(a) requires the title of a complaint to name all the parties, courts have allowed plaintiffs to proceed by pseudonym in certain circumstances. *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004). When deciding whether a plaintiff may proceed using a pseudonym, the Sixth Circuit held that a balancing test must be used that weighs the plaintiff's privacy interests against the countervailing presumption of open judicial proceedings. *Id.* According to the Sixth Circuit, a district court must consider several factors to determine whether a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings. These non-exhaustive considerations include: (1) whether the plaintiff

seeking anonymity is suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiff to disclose information "of the utmost intimacy;" (3) whether the litigation compels the plaintiff to disclose an intention to violate the law thereby risking criminal prosecution; and (4) whether the plaintiff is a child. *Id.*

Courts are "not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191, n.4 (2d Cir. 2008). While the Plaintiff is not challenging governmental activity, this case does satisfy factors two and four since it involves information "of the utmost intimacy" regarding the sex trafficking of the Plaintiff when she was a minor. Additionally, the Plaintiff is particularly vulnerable to the severe harm that will result from the disclosure of her identity. The motion therefore should be granted.

A.  **This Case Involves Information of Utmost Intimacy**

The Plaintiff has a substantial privacy interest in safeguarding the sensitive and highly personal information she must disclose in this litigation. Evaluating "the issue of pseudonymity requires weighing the scales between the public's interest and the rights to privacy advanced by the movant…[and] privacy interests are recognized in particular circumstances to be in the public interest." *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998).

In evaluating what information constitutes that of a highly sensitive and protected nature, it is well established that victims of rape, human trafficking, and sexual battery have a strong interest in protecting their identities. *See Michigan v.*

4

*Lucas*, 500 U.S. 145, 149 (recognizing a state's legitimate interest in protecting rape victims' privacy may outweigh defendant's constitutional right to confrontation); *Bloch v. Ribar*, 156 F.3d 673, 686 (6th Cir. 1998) (concluding that "a rape victim has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of rape where no penological purpose is being served"); *Doe v. Mich. Dep't. of Corr.*, No. 13-14356, 2014 WL 2207136, at 10 (E.D. Mich. May 28, 2014 (a prisoner's sexual and physical abuse is considered a matter of utmost intimacy); *Doe v. Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d 869, 872 (7th Cir. 1997) (a rape survivor's right to privacy overcomes the right for the public interest to know her identity); *Doe v. Cabrera*, 307 F.R.D. 1, 6 (D.D.C. 2014) (holding the sensitive and highly personal nature of the case, the risk of psychological harm to the plaintiff if the plaintiff's name were made public, and the minimal, if any, unfairness that the plaintiff's anonymity would cause the defendant weighed in favor of allowing plaintiff to proceed anonymously); *Fla. Abolitionist, Inc. v. Backpage.com LLC,* No. 17 Civ. 218, Doc. 46 at 2–4 (M.D. Fla. 2017) (multiple sex trafficking survivors' right to privacy, especially when some were minors, overcomes the right for the public interest to know their identities); *Jane Doe v. Uber Technologies, Inc.*, 17-CV-00950-WHO, Doc. No. 27 (N.D. Cal. Oct. 15, 2015) (the right for privacy for sexual and physical assault survivors, as well as human trafficking survivors, overcomes the right for the public interest to know their identities).

One of the main deterrents to reporting sex crimes and crimes of human trafficking is a survivor's fear that her identity will become known and, as such, a survivor's individual privacy right overcomes the public interest in knowing the survivor's identity. Society is better served by incentivizing victims of these horrific crimes to come forward instead of enabling the perpetrator to remain unaccountable and continue to commit sex crimes. *See Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d. at 872. As both a rape and sex trafficking survivor, Sarah has an absolute right to protect her identity which overcomes any public interest to the contrary.

Plaintiff filed her complaint using a pseudonym to protect her full identity in order to mitigate damage done to both her and her name as a result of the incidents alleged in her complaint. Disclosure of Plaintiff's ful identity will reveal information that is of a highly sensitive and personal nature which weighs in favor of allowing Plaintiff to proceed using a pseudonym.

B.  **Plaintiff was a Minor for the Majority of the Time she was Groomed and Sex Trafficked**

Defendant Onision targeted underage girls online, including Plaintiff, who were young, vulnerable, questioning their self-image or identity, or were seeking answers and guidance. As alleged in the Complaint, Defendants Onision and Lucas groomed Plaintiff beginning when she was 14 years old. They then began trafficking the Plaintiff which continued and was ongoing until she was 18 years old. Complaint ¶¶39–43.

C.     **Plaintiff is Particularly Vulnerable to the Severe Harm that will be Caused by Disclosure of her Full Identity**

If Plaintiff is publicly identified, it will further exacerbate the ongoing psychological harm and trauma she already suffers. Human trafficking strips victims of their dignity and value as a person; it erases a victim's choice and makes them doubt their own self-worth.[1]

Even the strongest sex trafficking survivors experience psychological vulnerability and harm that is easily exacerbated. Victims of sex trafficking have described the great deal of incredibly difficult work to be able to even recount their traumatic experiences.[2] Even at the most advanced stages of healing, many survivors struggle with "re-living the traumas over again through flashbacks, overwhelming intrusive and negative thoughts, feeling consumed by emotions of shame and guilt, thinking that they are living in hiding and unable to let themselves be truly seen, and experiencing fleeting feelings of dignity and respect."[3]

Victims of sex trafficking and sexual abuse are also uniquely vulnerable in the modern digital age where every perspective, whether accurate or inaccurate, gets published online in social media. *See Cabrera*, 307 F.R.D. at *7 ("Having the plaintiff's name in the public domain, especially in the Internet age, could subject the plaintiff to future unnecessary interrogation, criticism, or psychological trauma,

---

[1] https://www.unodc.org/unodc/en/frontpage/breaking-the-silence-on-human-trafficking.html
[2] Ruth Rondon, *Understanding the 4 Stages of Recovering from Sex Trafficking*, Human Trafficking eLearning, (2017) 1–7, 5 (This guide is written by a well-published survivor of sex trafficking and is attached hereto as "Exhibit 1.").
[3] *Id.* at 3.

as a result of bringing this case."). Sex traffickers and individuals who prey on children are experts in psychological manipulation; they use degrading and dehumanizing tactics to keep their victims manipulated and fearful. In certain segments of society, victims are often regarded as "at fault" for what happened to them. Subjecting Plaintiff to unsolicited feedback and widespread exposure by publicly disclosing her full identity—when what she seeks from this litigation is to come a step closer to being made whole again—will perpetuate and exacerbate the same harms that Plaintiff has already suffered.

Revealing Plaintiff's full identity will likely result in irreparable harm to her mental health and well-being. As outlined in her complaint, Onision has already initiated a public campaign to discredit, manipulate, and attack Plaintiff. Onision has used his platform to blame Plaintiff for "raping" him, accused Plaintiff of "blackmailing" him for bringing litigation against him, and defamed Plaintiff publicly by attacking her character. Complaint ¶¶316–29. Plaintiff reasonably fears retaliation from Onision and stalking and harassment from other members of the online community since many of Onisions's fans have targeted other women who opposed Onision. Complaint ¶47. If Plaintiff is forced to reveal her full identity, especially in the Internet age, she will be subjected to unnecessary humiliation and psychological trauma, and the fear and legitimate potential of Onision fans targeting her.

D.   **Lack of Prejudice to the Defendant**

While a plaintiff's full identity can be protected from the general public, it must be done in a way which does not prejudice the defendant or frustrate the

defendant from meaningfully "conducting a full range of discovery in building a defense for trial." *Plaintiff B v. Francis,* 631 F.3d 1310, 1318–19 (11th Cir. 2011). It is well established that when balancing the different interests involved, "courts have permitted parties to enter into protective orders that permit the limited disclosure of a plaintiff's identity for discovery purposes on the condition that the defendants do not disclose it to the general public." *Advanced Textile Corp.,* 214 F.3d at 1069.

Anonymity in this case will be limited to using the Plaintiff's first name in publicly available documents and on the docket. Plaintiff's true identity will be disclosed to the Defendants as long as they agree to keep it confidential. *James v. Jacobson*, 6 F.3d 233, 243 (4th Cir. 1993). Defendants Onision and Lucas already know the Plaintiff's true identity. Plaintiff will provide her true identity to all Defendants subject to a court order which provides for confidentiality concerning any of Plaintiff's identifying information including her true identity.

Plaintiff also seeks redaction of her personally identifying information from the public docket and assurances through a Court Order that Defendants will not use or publish Plaintiff's surname or identifying information beyond her first name online, in social media, in the news, or in any other forum.

As long as these requirements are met, Defendants will not be unduly prejudiced and this factor therefore weighs in favor of allowing Plaintiff to proceed using a pseudonym.

E.   **Public Interest**

"The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical." *Stegall*, 653 F.2d at 185. "The public right to scrutinize governmental functioning, is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself, as the assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Richmond Newspapers, Inc.*, 448 U.S. at 599–600.

The public interest is not harmed by allowing Plaintiff to proceed anonymously and the public interest in knowing the Plaintiff's true identity is atypically weak. While the presumptive openness of proceedings is a cornerstone of the American legal system, there is a countervailing compelling interest in affording a victimized plaintiff such as Sarah access to justice without the deterrence which would result from publicly identify victims of sexual assault and trafficking. The enforcement of federal sex trafficking and sexual abuse laws benefits the public as a whole, while identifying a Plaintiff does little, if anything, to further the public interest. *Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d. at 872; *Advanced Textile Corp.,* 214 F.3d at 1072–73.

The public has an interest in cases which are tried on their merits. *Advanced Textile Corp.,* 214 F.3d at 1073. In *Advanced Textile Corp.,* the plaintiffs filed a class action under the Fair Labor Standards Act based on unsafe workplace conditions. The plaintiffs filed using pseudonyms based on a well-founded fear of severe retaliation by the Chinese government including physical violence, deportation to

10

China, arrest, and imprisonment. In determining whether the plaintiffs were allowed to proceed under pseudonyms, the Ninth Circuit evaluated several factors including whether granting the request was in the public interest. *Id.* "[A]s the Supreme Court has recognized, fear of…reprisals will frequently chill [a person's] willingness to challenge…violations of their rights." *Id.* Measures that have a chilling effect on a party's willingness to litigate "violations of statutes are generally considered against public policy." *Id.* Permitting a plaintiff to use a pseudonym "will serve the public's interest in this lawsuit by enabling it to go forward." *Id.*

Forcing the plaintiff in this case to publicly disclose her true identity will deter similarly situated victims. Denying anonymity to victims of sex trafficking and sexual abuse will only further allow Defendants and other sex traffickers and their enablers to continue without detection or accountability. It is in society's best interest to allow Plaintiff to proceed using a pseudonym. Accordingly, this factor weighs in favor of granting Plaintiff's motion.

## **CONCLUSION**

The balancing test articulated by the Sixth Circuit clearly establishes that Plaintiff's need for anonymity outweighs the countervailing public interest in disclosure. For the foregoing reasons, the Court should grant Plaintiff's motion to proceed in this litigation using the pseudonym "Sarah."

The Court should further order that all materials filed in this action, all judgments, and any other documents concerning this action shall refer to Plaintiff as "Plaintiff" or "Sarah" without additional identifying information.

Plaintiff also requests that the Court enter an order to prevent the public dissemination of Plaintiff's true identity.

| | |
|---|---|
| DATED: March 28, 2023 | */s/ Lisa D. Haba* |
| | Lisa D. Haba |
| | **THE HABA LAW FIRM, P.A.** |
| | 1220 Commerce Park Dr., Suite 207 |
| | Longwood, FL 32779 |
| | Telephone: 844-422-2529 |
| | lisahaba@habalaw.com |
| | |
| | */s/ James R. Marsh* |
| | James R. Marsh (MBN: P85170) |
| | Margaret E. Mabie |
| | **MARSH LAW FIRM PLLC** |
| | 31 Hudson Yards, 11th Floor |
| | New York, NY 10001 |
| | Telephone: 212-372-3030 |
| | jamesmarsh@marsh.law |
| | margaretmabie@marsh.law |
| | |
| | *Attorneys for Plaintiff* |