KeyCite Blue Flag – Appeal Notification

Appeal Filed by SAMUEL JOHNSON, ET AL v. KATHY GRIFFIN, 6th Cir., March 29, 2023

2023 WL 2354910
Only the Westlaw citation is currently available.
United States District Court, M.D. Tennessee, Nashville Division.

Samuel JOHNSON, in his individual capacity, and Jill Johnson, in her individual capacity, Plaintiffs,

v.

Kathy GRIFFIN, in her individual capacity, Defendant.

NO. 3:22-cv-000295
|
Filed March 3, 2023

**Attorneys and Law Firms**

J. Will Huber, Pro Hac Vice, Todd V. McMurtry, I, Pro Hac Vice, Hemmer DeFrank Wessels, PLLC, Fort Mitchell, KY, Lyndsay C. Smith, Smith, PLC, Nashville, TN, for Plaintiffs.

Adam Siegler, Pro Hac Vice, Greenberg Traurig, LLP, Los Angeles, CA, Cynthia E. Neidl, Michael J. Grygiel, Pro Hac Vice, Greenberg Traurig, LLP, Albany, NY, Robb S. Harvey, Waller, Lansden, Dortch & Davis, LLP, Nashville, TN, for Defendant.

**MEMORANDUM**

WILLIAM L. CAMPBELL, JR., UNITED STATES DISTRICT JUDGE

*1 Pending before the Court is Defendant Kathy Griffin's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction and Failure to State a Claim, and Tennessee Public Participation Act Petition. (Doc. No. 18). Plaintiffs filed a response in opposition (Doc. No. 29), and Griffin filed a reply (Doc. No. 30). Griffin also filed a Notice of Supplement Authority in support of her Motion. (Doc. No. 31). For the reasons discussed below, the motion will be **GRANTED**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On April 24, 2021, Plaintiff Samuel Johnson ("Johnson") was at a local hotel restaurant for dinner. (Doc. No. 1 ¶¶ 46-47, 49).[1] An incident occurred at the hotel between Johnson and some teenagers dressed for prom. (*Id.* ¶¶ 65-72). One of the teenagers took a video of the incident on their cell phone and published an edited version (the "Clip") to their personal TikTok account. (*Id.* ¶¶ 67, 71, 76). The complaint alleges that the Clip had limited public exposure between April 24 and April 25, 2021. (*Id.* ¶ 80).

Kathy Griffin, a comedian who lives in California, tweeted about the incident on April 26, 2021. Her first tweet shared another user's video of the Clip, with that user's caption reading: "Homophobic POS in Tennessee harasses a teenager for wearing a dress to prom." (*Id.* ¶ 81). Griffin's added commentary to the quoted tweet read:

> If this is Sam Johnson in Nashville, Tennessee, the CEO of @VisuWell, healthcare-tech-growth strategist, married to Jill Johnson where they may reside in Franklin, Tennessee, it seems like he's dying to be online famous. [shrugging emoji, rainbow flag emoji, shrugging emoji]

(*Id.*). Later that morning, Griffin tweeted a screen shot of google image search results for "ceo visuwell" showing two headshots of Johnson along with the caption: "Who is? THIS Sam Johnson of Franklin Tennessee?" (*Id.* ¶ 86; Doc. No. 1-5). That evening, VisuWell tweeted four times via its official Twitter account about the incident:

> Post 1/4: We unequivocally condemn the behavior exhibited by Sam Johnson in a recent video widely circulated on social media.

> Post 2/4: After investigating the matter and speaking to the individuals involved, the VisuWell BOD has chosen to terminate Mr. Johnson from his position as CEO, effective immediately. Gerry Andrady, our President and COO, will lead the company through this important time.

> Post 3/4: VisuWell's culture emphasizes respect, kindness, and compassion, especially for those from traditionally marginalized communities, and we maintain a zero-tolerance policy for intolerance of any kind.

> Post 4/4: Mr. Johnson's actions contradicted the high standards we set for ourselves in promoting the health of those who use our platform.

(Doc. No. 1 ¶¶ 87-88; Doc. No. 1-6). In response to VisuWell's second tweet, Griffin tweeted:

> Has Sam Johnson has been removed from his position on the Board of Directors and, if not, what measures is Visuwell taking in this regard? Leaving Johnson on the Board raises an eyebrow that the company intends to rehire. Know the nation will remain vigilant. (Per @NastyProud)

*2 (Doc. No. 1 ¶ 89). VisuWell replied to Griffin minutes later, tweeting: "terminated." (*Id.* ¶ 90; Doc. No. 1-7). The complaint alleges that Griffin's first tweet about the incident on April 26, 2021, caused the Clip to go viral. (Doc. No. 1 ¶¶ 81, 83, 95). The teenager who originally posted the Clip to his TikTok tweeted: "KATHY [two crying emojis] when I posted this I did NOT expect it to go viral to this extent but THANK YOU SO MUCH." (*Id.* ¶ 83). Griffin tweeted in reply:

> Jacob, I'm so sorry you had to be anywhere near this thing. I was very anxious for you while watching, but am grateful you took the video (as is your right.) I'm proud to be an ally. Let me know if there's anything I can do to help. [heart emoji, rainbow flag emoji]

(*Id.*) Plaintiffs filed the present suit against Griffin on April 25, 2022, based on diversity of citizenship and an amount in controversy exceeding $75,000.00. Plaintiffs bring state law claims for tortious interference with employment relations, common law and statutory tortious interference with contractual relations, intentional infliction of emotional distress, invasion of privacy – intrusion upon seclusion, prima facie tort, and negligence *per se*. Griffin filed the pending motion to dismiss for lack of personal **jurisdiction** under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Rule 12(b)(6). (Doc. No. 18).

## II. PERSONAL JURISDICTION

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to file a motion to dismiss for lack of personal jurisdiction. In considering such a motion, the district court " 'may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.' " *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499 (6th Cir. 2020) (quoting *Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). When the district court rules based on written submissions alone, as in the present case, the plaintiff need only make out a prima facie showing that personal jurisdiction exists. *Malone*, 965 F.3d at 504.

"Motions to dismiss under Rule 12(b)(2) involve burden shifting." *Id.* "The plaintiff must first make a prima facie case, which can be done merely through the complaint." *Id.* (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). "The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence." *Id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). "Once the defendant has met the burden, it returns to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* (internal quotations omitted). "The court must view the pleadings and affidavits in a light most favorable to the plaintiff and not weigh the controverting assertions of the party seeking dismissal." *Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 278 (6th Cir. 2021) (citation and internal quotations omitted).

### B. Analysis

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020). "Due process requires that an out-of-state defendant have 'minimum contacts' with the forum state sufficient to comport with 'traditional notions of fair play and substantial justice.' " *Blessing v. Chandrasekhar*, 988 F.3d 889, 904 (6th Cir. 2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Tennessee's long-arm statute "extends its jurisdiction to due process's limits, so due process is all [the court] must address." *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019).

*3 Under the applicable burden shifting framework, "the first question is whether the [ ] complaint makes out a prima facie showing of jurisdiction." *Malone*, 965 F.3d at 504. "Personal jurisdiction falls into two categories: general and specific." *Id.* at 501 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In responding to the pending motion, Plaintiffs argue the Court has specific jurisdiction over Griffin.[2] "Specific jurisdiction turns on the 'affiliation between the forum and the underlying controversy.' " *Parker*, 938 F.3d at 839 (quoting *Goodyear*, 564 U.S. at 919) (quotation marks and brackets omitted). "This requires a plaintiff to establish, with reasonable

particularity, sufficient contacts between the defendant and the forum state." *Malone*, 965 F.3d at 504. "Th[is] 'minimum contacts' analysis depends on the defendant's contact with the forum, 'not the defendant's contacts with persons who reside there.' " *Blessing*, 988 F.3d at 904 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). "That means [Griffin]'s 'suit-related conduct' must establish 'a substantial connection' with Tennessee." *Parker*, 938 F.3d at 839 (quoting *Walden*, 571 U.S. at 284). While "[a] defendant may be subject to personal jurisdiction ... if her 'efforts are 'purposefully directed' toward residents of another State,' " *Blessing*, 988 F.3d at 904 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)), "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285 ("Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated.") (internal quotations and citation omitted). "These same principles apply when intentional torts are involved." *Id.* at 286.

Here, Plaintiffs argue the following factual allegations make the requisite prima facie showing of specific personal **jurisdiction**: (1) Griffin's tweets intentionally targeted them, (2) the injury from Griffin's tortious conduct was felt in Tennessee, and (3) Griffin has done business in Tennessee at least twice by personally performing her stage act. (*See* Doc. No. 29 at 4-8 (citing Doc. No. 1 ¶¶ 43, 78, 80-83, 86, 89, 90, 92, 99-106)). *Walden* forecloses Plaintiffs' argument that Griffin is subject to **jurisdiction** because her allegedly tortious postings on **social media** intentionally targeted and harmed Tennessee residents. 571 U.S. at 289 ("Such reasoning improperly attributes a plaintiff's forum connections to the defendant[.]"); *see also Blessing*, 988 F.3d at 905 ("personal **jurisdiction** is absent when the communication was not specifically directed at the forum state."). In *Walden*, the Supreme Court held that a federal district court in Nevada lacked **jurisdiction** over a Georgia defendant who allegedly drafted a false affidavit about the Nevada plaintiffs knowing it would harm Nevada plaintiffs. 571 U.S. at 279-81, 289. It was not sufficient that the plaintiffs had "strong forum connections" and suffered "foreseeable harm" in the forum state because "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 289-90 ("[defendant's] actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections.").

Even viewing the factual allegations in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, the factual allegations in the complaint do not demonstrate that Griffin has sufficient minimum contacts with Tennessee such that jurisdiction over her would be reasonable. While Griffin's tweets expressly named Tennessee residents, a Tennessee business, and Tennessee cities, there are no allegations in the complaint that Griffin's tweets were directed at Tennessee readers, as opposed to the residents of other states, or that Griffin posted her tweets hoping to reach Tennessee specifically as opposed to her two million Twitter followers generally. *See Blessing*, 988 F.3d. at 906. Nor does the complaint allege that Griffin has any Twitter followers in Tennessee or that Tennessee was the focal point of Griffin's tweets. While Plaintiffs allege that Griffin's tweets caused third parties to threaten and dox them in Tennessee, (*see* Doc. No. 1 ¶¶ 101-102), "the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between ... third parties[ ] and the forum State." *Blessing*, 988 F.3d at 906 (quoting *Walden*, 571 U.S. at 284). Finally, Griffin's two previous live performances in Tennessee are insufficient contacts to form the basis for this Court to exercise personal jurisdiction over Griffin in the present case because Plaintiffs' causes of action do not arise from those alleged contacts. *See Goodyear*, 564 U.S. at 919.

### III. CONCLUSION

*4 For the foregoing reasons, the exercise of jurisdiction over Griffin would offend due process. Accordingly, Griffin's motion to dismiss will be **GRANTED** for lack of personal jurisdiction.

An appropriate Order will enter.

**All Citations**

Slip Copy, 2023 WL 2354910

Footnotes

Johnson v. Griffin, Slip Copy (2023)

1     Plaintiff Jill Johnson was out of town on April 24, 2021. (*Id.* ¶ 48).

2     As Plaintiffs do not contend the Court has general personal jurisdiction over Griffin, it is unnecessary to address the requirements for the exercise of such jurisdiction.

---

End of Document     © 2023 Thomson Reuters. No claim to original U.S. Government Works.