**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

SARAH,

     Plaintiff,

     v.

GOOGLE LLC, YOUTUBE LLC,
JAMES JACKSON, also known online as
"ONISION," and LUCAS JACKSON,
formerly known online as
"LAINEYBOT," "LAINEY" and "KAI,"

     Defendants.

CASE NO.: 1:23-cv-00223

HON.  HALA Y. JARBOU

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2); (b)(3); (b)(5); OR IN THE ALTERNATE, TO DISMISS OR TRANSFER PURSUANT TO 28 U.S.C.A §1404(a) FILED BY DEFENDANTS JAMES JACKSON AND LUCAS JACKSON**

**NOW COMES** Defendants James Jackson and Lucas Jackson and do hereby file this Brief in Support of their Motion to Dismiss and hereby state as follows:

## I.    Introduction

This litigation has been filed by a legal adult persona identifying as "Sarah" (hereafter, Plaintiff) against Google, YouTube, and two individual defendants, James Jackson and Lucas Jackson (hereafter, "the Jackson Defendants") based on allegations that occurred in Washington.[1]

Before delving into and defending the claims against them, the Jackson Defendants respectfully request that this Court dismiss the Complaint against them because the Federal District Court for the Western District of Michigan lacks personal jurisdiction over them. As will be

---

[1] Defendants James Jackson and Lucas Jackson are initially filing this Motion to Dismiss for lack of personal jurisdiction and/or improper venue. In the event this Court does determine that Michigan has personal jurisdiction over Defendants James Jackson and Lucas Jackson and venue is proper within the Western District of Michigan, Defendant's intend to challenge Plaintiff not identifying herself with her full legal name. Plaintiff's Complaint names her as a legal adult *sui juris*.  If Plaintiff chooses to proceed with litigation when she is admittedly an adult *sui juris*, then she should be required to be named in her full legal capacity in all court documents.

more fully explained below, Plaintiff's Complaint is barren of any factual allegations that would subject the Jackson Defendants to jurisdiction in Michigan, or specifically link any of the alleged unlawful conduct by the Jackson Defendants to the Western District of Michigan.  In fact, Plaintiff does not even articulate any facts to establish that she herself resides within the Western District of Michigan. The only statement relating to Plaintiff's residence is found at Paragraph 45 of Plaintiff's Complaint, which states "[Plaintiff] is a resident of Michigan and is *sui juris*."  Plaintiff's Complaint, ¶45, ECF 1, Page ID 8.

Second, and in the alternative, if this Court finds that the Federal District Court for the Western District of Michigan has personal jurisdiction over the Jackson Defendants, then they request that this case be dismissed or transferred to a Federal District Court located in Western District of Washington.

Last, because service was not made upon the Jackson Defendant's within the State of Michigan, the Jackson Defendants respectfully request that this Court quash the summons served on them in the State of Washington and also dismiss Plaintiff's Complaint pursuant to 12(b)(5).

## II.   Legal Analysis and Argument

### A.   Dismissal Pursuant to Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may seek dismissal if the court lacks personal jurisdiction over that defendant. "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). In the face of a supported motion to dismiss, the plaintiff may not rest on its pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). When a court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing, it must consider the pleadings and affidavits in the light most favorable to the plaintiff. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). In

2

such an instance, the plaintiff " 'need only make a prima facie showing of jurisdiction.' " *Bird*, 289 F.3d at 871 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). And the court may not weigh "the controverting assertions of the party seeking dismissal." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen*, 935 F.2d at 1459).

"Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Bird*, 289 F.3d at 873 (citing *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (1992)); see *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (summarizing prior decisions as "recognizing two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction.") (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.' " Bird, 289 F.3d at 873 (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). As recently described by the Supreme Court, "[a] state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Co.*, 141 S. Ct. at 1024 (citing *Goodyear*, 564 U.S. at 919)).

"Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.* at 1024. "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.' " *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Yet even then—because the defendant is not 'at home'— the forum State may exercise jurisdiction in only certain cases." *Id.* at 1025. That is, "[t]he plaintiff's claims 'must arise out of or relate to the defendant's contacts' with the forum." *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (but omitting alterations))); see *Bird*,

289 F.3d at 874 (specific jurisdiction proper only "in a suit arising out of or related to the defendant's contacts with the forum") (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Thus, the Court must determine whether both the state's long-arm statute and the Due Process Clause of the United States Constitution permit the exercise of jurisdiction. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.,* 138 F.3d 624, 627 (6th Cir. 1998)

### i.  Michigan's Long-Arm Statute (MCL 600.705)

Plaintiff's Complaint lacks any alleged facts that would support that the Jackson Defendants' contacts with the State of Michigan were of such continuous and systematic nature that they should be subject to general personal jurisdiction in Michigan, and so now this Court must analyze if this Court has long-arm jurisdiction over the Jackson Defendants pursuant to MCL 600.705.

If the Court determines that it has jurisdiction under MCL 600.705, then the Plaintiff must show that the Court's exercise of specific personal jurisdiction over the Jackson Defendants is both: (1) authorized by "the law of the state in which it sits," [Michigan]; and (2) "in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). See also *Bird v. Parsons*, 289 F.3d at 871 (6th Cir.2002) quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir.1992). Personal jurisdiction must be analyzed and established over each defendant independently. *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Pursuant to MCL 600.705, the existence of any of the following relationships between an individual or the individual's agent and the State of Michigan constitutes a sufficient basis of jurisdiction to enable a court of record of the state of Michigan to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or a representative arising out of an act that creates any of the following relationships:

(1) the transaction of any business within the state;

4

(2) the doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort;

(3) the ownership, use, or possession of real or tangible personal property situated within the state;

(4) contracting to insure a person, property, or risk located within Michigan at the time of contracting;

(5) entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant;

(6) acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state; or

(7) maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

Even a single contact with the forum state may suffice for personal jurisdiction **if it is directly and substantially related to a plaintiff's claim**. *Lafarge Corp. v. Altech Environment*, U.S.A., E.D.Mich.2002, 220 F.Supp.2d 823 [Emphasis Added], citing *Theunissen v. Matthews*, 935 F.2d 1454, 1460 (6th Cir.1991). In the present case, the Defendants did not make any contacts with Michigan; however, Plaintiff seems to be alleging that the Defendants' social media postings to YouTube renders them subject to Michigan's jurisdiction—a legal theory which Defendants will show is not legally meritorious.

### a. Defendants' YouTube Channel

Plaintiff alleged that James "created a channel on Google's YouTube platform in 2006 and began posting to it in October 2007." **Complaint, ECF 1, ¶8, PageID 3**. She further alleged that James became known for his following and began creating and posting videos to YouTube. *Id.,* **¶24, PageID 4**. Plaintiff went on to allege that "[James] targeted underage girls online and provided material that appealed to that age group, such as comments on body image, appearance, self-identity, suicide ideology, and similar topics. [James] would also rate and comment on pictures of people and their bodies, often sent to him by young teen girls. *Id.,* ¶16.

5

Plaintiff alleged, "Specifically, [James] appealed to minor females, like Plaintiff, who were young, vulnerable, questioning their self-image or identity, or were seeking answers and guidance." *Id.* ¶17.

Plaintiff alleged that "[James] used his fame and platform to objectify children, to form relationships with underage girls, to entice them, groom the (sic), and to arrange transportation across state lines and facilitate further grooming and sexual activity." *Id.* ¶29, PageID 6. However, Plaintiff does not identify how James specifically or intentionally "targeted" underage girls *in the state Michigan*- other than Plaintiff's allegations that James posted to his YouTube channels.

Plaintiff alleged that "After [James] introduced [Lucas] to his followers, [Lucas] instantly became a part of [James'] YouTube channel and gained fame through [Lucas' marriage to James]. *Id.* ¶32, PageID 6. Plaintiff then alleges that "[Lucas began flirting with and grooming underage girls that were fans of [James] through the YouTube platform, including but not limited to [James'] channels and forums. *Id.* ¶33, PageID 6. Plaintiff stated, "Those same girls were then invited to [the Jackson Defendants'] home with the intent to engage in sexual acts and three-way sexual encounters with the couple, or for additional grooming to achieve the ultimate goal of sexual conquest by [the Jackson Defendants]. *Id.* ¶34, PageID 6.

Plaintiff admits that she came to know who [Lucas] was by watching [James] channels and saw [Lucas] as a celebrity because [Lucas] was married to [James]. *Id.*, ¶38, PageID 7. She further states that "[Lucas] befriended 14-year-old [Plaintiff] online." *Id.*, ¶39. Plaintiff then states, "After flirting with and grooming [Plaintiff] for two years, [Lucas] and [James] invited [Plaintiff] to visit them at their home in Washington State." *Id.*, ¶40. Plaintiff then admits to traveling to Washington ten times. *Id.*, ¶41. She claims that during these visits, that Defendants "groomed [Plaintiff], a minor child" and gave illustrations of what Plaintiff felt were grooming activities and *which allegedly occurred in Washington* by Plaintiff's own admission. *Id.* ¶42, PageID 8. Plaintiff alleged, "After years of being groomed and sexualized by [Lucas] and [James] that [Plaintiff] was

raped by [James] at the age of eighteen (18)." *Id.*, ¶43. Again, the alleged rape would have also occurred in the State of Washington by Plaintiff's own admission.

Plaintiff alleged that James became a "famous and popular YouTuber on the platform and became monetized." *Id.* ¶21, PageID 5. Plaintiff stated, "When a person becomes monetized, YouTube and that Person sign a YouTube Partner Program ("YPP") contract, which forms an agency and/or profit sharing relationship." *Id.* ¶22, PageID 5.

Plaintiff appears to be grasping at straws in asserting that the Jackson Defendants were somehow "conducting business" in Michigan based on their YouTube postings and James' YPP contract. Plaintiff stated, "Joining the YPP is optional, but if someone becomes a YouTube Partner, Google handles all the advertising placement, revenue collection, and pays the YouTube partner their portion of the profits, pursuant to the contract signed." *Id.* ¶23. And, "As a member of the program, Google "matches [the YouTube Partner's] videos with advertisers, decides what ads will appear, and keeps track of all traffic (views), as well as ad responses. YouTube then pays [the YouTube Partner] accordingly for [their] participation in the Partner program." *Id.* ¶24, PageID 5.

James' private contract with YouTube should not subject him to Michigan jurisdiction: he did not negotiate it in Michigan; he did not execute it in Michigan, and neither he, Lucas, YouTube, or Google are Michigan residents or have a primary place of business in Michigan. James had no control over who would watch his YouTube channel, or whether or not the channel was even broadcast to Michigan residents which was exclusively in the control of Google and or YouTube. Plaintiff's Complaint fails to establish a nexus as to how the Defendants' YouTube Channel was "directly and substantially related" to Plaintiff's claims of being groomed and sex trafficked *in Washington*.

Because YouTube is a social media platform, the Defendants cite the case of *Johnson v. Griffin*, 2023 WL 2354910, No. 3:22-cv-000295 (March 3, 2023) which held that merely posting to a social media platform, such as YouTube, does not form sufficient contacts with a forum state

to subject a defendant to the forum state's jurisdiction. (See **Exhibit A**-**Case of Johnson v Griffin, unpublished**). The *Johnson* plaintiff argued that she had made prima facie showing of specific personal jurisdiction because: (1) the defendant's tweets intentionally targeted her, (2) the injury from defendant's tortious conduct was felt in the state of Tennessee, and (3) the defendant had done business in Tennessee at least twice by personally performing a stage act. [internal citations omitted]. The court held that the case of *Walden v. Fiore*, 571 US 277 (2014) *foreclosed* the plaintiff's argument that the defendant was subject to jurisdiction in Tennessee because of the allegedly tortious postings on social media which intentionally targeted and harmed Tennessee residents. See *Walden*, 571 U.S. at 289 ("Such reasoning improperly attributes a plaintiff's forum connections to the defendant[.]"); see also *Blessing v. Chandrasekhar*, 988 F.3d at 905 ("personal jurisdiction is absent when the communication was not specifically directed at the forum state.").

In *Walden*, the Supreme Court held that a federal district court in Nevada lacked jurisdiction over a Georgia defendant who allegedly drafted a false affidavit about the Nevada plaintiffs knowing it would harm Nevada plaintiffs. *Walden,* 571 U.S. at 279-81, 289. It was not sufficient that the plaintiffs had "strong forum connections" and suffered "foreseeable harm" in the forum state because "[t]he proper question is **not** where the plaintiff experienced a particular injury or effect **but whether the defendant's conduct connects him to the forum in a meaningful way.**" *Id. at 289-90* [Emphasis added]("[defendant's] actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections.")

The court in *Johnson v. Griffin* stated, "Even viewing the factual allegations in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, the factual allegations in the complaint do not demonstrate that [defendant] has sufficient minimum contacts with Tennessee such that jurisdiction over her would be reasonable. While Griffin's tweets expressly named Tennessee residents, a Tennessee business, and Tennessee cities, there are no allegations in the

complaint that Griffin's tweets **were directed at Tennessee readers, as opposed to the residents of other states, or that Griffin posted her tweets hoping to reach Tennessee specifically as opposed to her two million Twitter followers generally**. *Johnson v. Griffin*, at *3, citing *Blessing*, 988 F.3d. at 906 [Emphasis added]. The Johnson court went on to state, "Nor does the complaint allege that Griffin has any Twitter followers in Tennessee or that Tennessee was the focal point of Griffin's tweets. While Plaintiffs allege that Griffin's tweets caused third parties to threaten and dox them in Tennessee, (citations omitted), "the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between ... third parties[ ] and the forum State." *Id*., citing *Blessing,* 988 F.3d at 906 (quoting Walden, 571 U.S. at 284). The *Johnson* court also declined to find that Griffin's two previous live performances in the state of Tennessee were sufficient contacts to form the basis for the Tennessee court to exercise personal jurisdiction over Griffin because Plaintiffs' causes of action did not arise from those alleged contacts. *Id.*, referencing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Just like the Court in *Johnson v. Griffin*, this Court must find that the Jacksons Defendants' YouTube channel is not a sufficient basis for them to be subject to Michigan's jurisdiction under Michigan's Long-Arm statute.

Plaintiff implies personal jurisdiction over the Jackson Defendants in the State of Michigan by a blanket, and unsupported statement: "This Court has personal jurisdiction over the Defendants because they have committed the acts complained of herein in this State and in this District."  Plaintiff's Complaint, RE 1, ¶61, Page ID 10.  However, as outlined above, not a single allegation in Plaintiff's Complaint claims that any of the *acts* giving rise to her claims occurred in Michigan or even that the Jackson Defendants were present in or conducted business in Michigan.

Plaintiff's Complaint is barren of any factual allegations that would show that the Jackson Defendants are subject to either general or specific personal jurisdiction in the Western District of Michigan. Ironically, there is nothing in the Complaint connecting the Jackson Defendants to

the Plaintiff until page 29 of Plaintiff's Complaint, at ¶176, where Plaintiff admits that that she sought out and found Defendant James Jackson on YouTube. Plaintiff's Complaint, RE 1, ¶176, Page ID 29. Then at ¶177, Plaintiff states: "[Plaintiff] became a fan of the Onision Speaks channel, and in 2012, became even more of a fan when Lainey was introduced as Onision's significant other." *Id*. at Page ID 30. This paragraph does not suggest that *either* of the Jackson Defendants *targeted* Plaintiff as a Michigan resident, directed their YouTube channel at Michigan residents, conducted business in Michigan, or were ever physically present in or traveled to Michigan.

In her Complaint, RE 1, ¶ 243-44, Page ID 41, Plaintiff admits that she is the one who *traveled* to Washington: "After arriving in Gig Harbor, Washington, …  there was additional misconduct on the part of the [Jackson Defendants] towards her, such as: Defendant James Jackson ("James") was treating [Plaintiff] in a mean and belittling manner (¶ 245); Defendants' continued jokes and sexual comments (¶ 249); Plaintiff finally telling James that she was uncomfortable with his "jokes" and comments; and that James allegedly was enraged so he asked Plaintiff to leave his Gig Harbor, Washington home. *Id*. at ¶ 249-251, Page ID. 41. While the Complaint attempts to allege many examples of allegedly unlawful conduct on the part of the Jackson Defendants, none of those instances occurred within the State of Michigan.  All of the allegations in the Complaint which give rise to the Plaintiff's claims occurred solely within the State of Washington.

Plaintiff even admits in her Complaint that she traveled *several times* from Michigan to Washington, even after Plaintiff reached the age of majority, to stay with the Jackson Defendants in their home — despite all of the alleged misconduct that she claims occurred.  Plaintiff, then as a legal consenting adult, even traveled from Michigan to Washington to spend Christmas with the Jackson Defendants. *Id*. at ¶266, Page ID 43. Again, Plaintiff never alleges that the Jackson Defendants ever traveled to Michigan, or that any the alleged conduct occurred in Michigan.

Plaintiff mentions a non-disclosure agreement in her Complaint (hereafter, "the NDA") that James discussed with her on or around January 10, 2019, however, the only statement in the Complaint attributed to James and discussing the NDA while Plaintiff was purportedly in Michigan was, "Also I think I'll send you an NDA early so I can't talk about you publicly, nor do I want to in the future, your privacy is important. Will get it to you soon, unless you just want to wait till you visit again." *Id.* at ¶273, Page ID 44. The Complaint then states "[Plaintiff] was able to visit [Defendants in Washington] again without signing the NDA" and that "[Plaintiff] traveled and arrived in Washington on or about January 16, 2019." *Id.* at ¶ 275-276, Page ID 44.  There is nothing alleged in the Complaint whatsoever that any discussions or negotiations regarding the contractual terms of the NDA, the content of the NDA, or even that a copy of the NDA was ever sent by the Jackson Defendants to the Plaintiff while she was in State of Michigan.

Plaintiff further admits that after returning to Washington on or about January 16, 2019— a trip that occurred after Plaintiff was a legal, consenting adult—Plaintiff alleges that the Jackson Defendants and Plaintiff then had sexual relations. *See Id.* at ¶277-301, Page ID 46-47. It was also during this trip that Plaintiff discussed the NDA document with the Jackson Defendants and ultimately signed the contract while she was in Washington. *Id.* at ¶ 302-303, Page ID 47.  See **also Exhibit B-Signed NDA Agreements showing the Defendants' address to be Gig Harbor, WA**. There are allegations in the Complaint by Plaintiff that the NDA is not valid, and that even if it is deemed valid, *that James is the party in breach of the contract*—then it further supports Defendants' position that all of the NDA contract negotiations, discussions, signing, and even the alleged breaches occurred exclusively within Washington. *Id.* at ¶ 305-306, Page ID 47.  (It is also worth noting that despite all of the alleged misconduct on the part of the Jackson Defendants, Plaintiff traveled three more times between February 2019 and July 2019 to visit with and have sexual relations with the Jackson Defendants. *Id.* at ¶ 311-315, Page ID 48.)

In support of their motion, the Jackson Defendants have attached personal affidavits swearing that: (1) they have not conducted business within Michigan; (2) they have not done or

caused an act to be done, or consequences to occur, in Michigan resulting in an action for tort; (3) they do not own, use, or possess any real or tangible property in Michigan; (4) they have not contracted to insure a person, property, or risk located within Michigan at the time of contracting; (5) they have not entered into any contract for services to be rendered or for materials to be furnished in Michigan; (6) they do not own or have any interests in any businesses incorporated or having its principal place of business within Michigan; and (7) they do not maintain a domicile in the State and are not subject to any divorce, alimony, separate maintenance, property settlements, or child support/custody proceedings in Michigan. Their affidavits establish that no amount of discovery can or would establish long-arm jurisdiction over them. **Exhibit C-Affidavit of James Jackson; Exhibit D-Affidavit of Lucas Jackson.**

Based on the above, the case should be dismissed since this Court does not have general jurisdiction or specific jurisdiction under Michigan's Long-Arm statute of the Jackson Defendants.

### b.    Due Process Considerations

If the Court determines that Michigan does have specific jurisdiction under the Long-Arm statute, then "[d]ue process requires that an out-of-state defendant have 'minimum contacts' with the forum state sufficient to comport with 'traditional notions of fair play and substantial justice.'" *Blessing v. Chandrasekhar*, 988 F.3d 889, 904 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). This entails an assessment of a defendant's contacts with the forum state to determine whether he "purposefully avail[ed himself]' of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This ensures that a defendant will not be hailed into a jurisdiction solely as a result of "random, fortuitous, or attenuated contacts."  *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)).

### i. 6th Circuit Considerations of Due Process Considerations

The Sixth Circuit has set forth three criteria that must be met before a court will exercise personal jurisdiction over a defendant after the long-arm statute is satisfied: First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. See *Southern Mach. Co. v. Mohasco Inds., Inc.*, 401 F.2d 374 (6th Cir. 1968). The showing that the defendant purposefully availed himself of the privilege of transacting business or causing a consequence in the forum state is essential. *Id.*

### ii. Purposeful Availment

The United States Supreme Court has expressed that the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Keeton v. Hustler Magazine*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The key to this requirement is whether the defendant reached out beyond his state to create a continuous and systematic relationship with citizens of another state. *Burger King*, 471 U.S. at 473, 105 S.Ct. 2174). "'Purposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities. The defendant will have reason to foresee being 'haled before' a Michigan court." *Jeffrey v. Rapid Am. Corp.*, 448 Mich. 178, 187, 529 N.W.2d 644 (1995)).

The Court must apply a constitutional standard defined in the broadest terms of general fairness to the Defendants. See *Cf. Perkins v. Benquet Mining Co.*, 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952). For the purposes of that standard, "business is transacted in a state

13

when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state; and the defendant has purposefully availed himself of the opportunity of acting there if he should have reasonably foreseen that *the transaction would have consequences in that state." Southern Mach. Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 383; 159 USPC 72 (1968). Neither of these tests are satisfied in this case as to either of the Jackson Defendants.

The 6th Circuit has looked at "internet activity" as a means to determine if personal jurisdiction exists over an out-of-state defendant. In the case of *Wilson v. Ancestry.com LLC*, the Court stated, "Courts generally agree that maintaining a website accessible from within the forum state is not, by itself, sufficient to establish specific personal jurisdiction." *Wilson v Ancestry.com LLC,* -----F. Supp.3d----- (2023); 2023 WL 1112265. However, the operation of an internet website can constitute the purposeful availment of the privilege of acting in a forum state under the first *Mohasco* factor 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.' *Wilson*, at 5, citing *Stewart v. M & M Headgear, Inc.*, No. 5:14 CV 857, 2015 WL 1423560, 2015 U.S. Dist. LEXIS 39720 (N.D. Ohio Mar. 27, 2015).*Bird v. Parsons,* 289 F.3d 865, 874 (6th Cir. 2002) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002) finding that defendants met the purposeful availment requirement where they maintained a website on which Ohio residents could register domain names and accepted the business of more than 4,000 Ohio residents).

The Plaintiff does not allege that the Jackson Defendants maintained a website; instead, she alleges that they were utilizing the social media platform, YouTube. They did not intentionally broadcast their YouTube channel to Michigan residents; they did not conduct business with Michigan residents; and they never specifically targeted Michigan. They did not offer anything for sale in Michigan. Just like the court in *Johnson v. Griffin*, this Court must hold that posting to a social media platform alone, like YouTube, Facebook, Instagram, TikTok, etc., should not subject

an out-of-state defendant to Michigan's jurisdiction because the defendants never "purposely availed" themselves to Michigan's jurisdiction.

**B.** **Dismissal Pursuant to Rule 12(b)(3)**

In a Rule 12(b)(3) motion to dismiss, parties may assert the defense of improper venue by motion prior to filing a responsive pleading. Fed. R. Civ. P. 12(b)(3). "Rule 12(b)(3) allow[s for] dismissal only when venue is 'wrong' or 'improper.'" *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). Venue is proper in "(1) a judicial district in which any defendant resides, . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws. The plaintiff bears the burden of establishing that venue is proper. *Audi AG & Volkswagen of am., Inc. v. Izumi*, 204 F. Supp.2d 1014, 1017 (E.D. Mich. 2002). The Court may examine facts outside of the complaint but must draw reasonable inferences and resolve factual disputes in favor of the plaintiff. *Id.*

"Rule 12(b)(3) allow[s] dismissal only when venue is 'wrong' or 'improper.'" *Atl. Marine*, 571 U.S. at 55. If a suit is filed in an improper judicial district, a court may dismiss the suit upon timely objection or, in the interest of justice, may transfer the case to a district where the suit could have been brought. 28 U.S.C. § 1406(a), (b). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, …" *Id.* The U.S. District Court for the Western District of Michigan is an improper venue under federal venue laws.

Pursuant to 28 USCA §1391, a civil action may be brought in--

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

15

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 USCA §1391.

In this case, none of the defendants named in this suit are residents of Michigan or have a principal place of business in Michigan. Additionally, none of the acts giving rise to the Plaintiff's claims occurred in Michigan. Thus, the case should have been filed in the Western District of Washington.

At ¶218 of the Complaint, PageID 37, Plaintiff alleges that "[Plaintiff's] Mother agreed to allow Plaintiff [to move from Michigan to Washington to reside with the Jackson Defendants]" and that Plaintiff's Mother "signed a medical and financial power of attorney over to [Defendant Lucas Jackson]." *Id.* Plaintiff's mother also awarded Defendant Lucas Jackson "guardianship of [Plaintiff]" who was a minor at the time. *Id.* Plaintiff alleges that she returned to Gig Harbor, Washington, and she "moved in with [the Jackson Defendants]." *Id.*, ¶220.

Plaintiff's Complaint highlights all of the numerous times that she traveled to the State of Washington to either visit or live with the Jackson Defendants. The Complaint never articulates any contacts that the Jackson Defendants had with the State of Michigan during this time. There are no details alleged in the Complaint whatsoever that the Jackson Defendants purposefully availed themselves to Michigan's jurisdiction.

Plaintiff alleges that there was misconduct on the part of the Jackson Defendants towards Plaintiff such as the use of sexually charged jokes, alleged sensual touching of Plaintiff by the Defendants, massages, wrestling matches, etc. Id., ¶222- ¶237, PageID 38-29. However, all of this alleged inappropriate conduct alleged by Plaintiff occurred while Plaintiff was living with the Jackson Defendants within the State of Washington.

16

Plaintiff allegedly returned to Michigan on or around February 21, 2017, traveled to Washington on or around April 5, 2017, and then returned to Michigan on or around April 13, 2017.  Id., ¶¶238-241, PageID 40.  At no time did either of the Jackson Defendants ever travel to Michigan. All of Plaintiff's allegations occurred in Washington because she voluntarily—and with her parent's consent and authorization—traveled to Washington.

The Court must dismiss this suit because it was filed in a wrong or improper venue. 28 U.S.C. § 1391(b)(1); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 431 (2d Cir. 2005) and a substantial part of the actions giving rise to Plaintiff's claims did not occur in Michigan. 28 U.S.C. § 1391(b)(2).

<strong>C.</strong>    <u>Dismissal or Transfer Under <strong>28 U.S.C. § 1404(a)</strong></u>

Even where venue is proper, 28 U.S.C. § 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A decision on whether to transfer lies with the broad discretion of the trial court. *Bunting ex rel. Gray v. Gray*, 2 F. App'x 443, 448 (6th Cir. 2001). "Once challenged, plaintiff bears the burden of showing that its initial choice of venue is proper." *Sechel Holdings, Inc. v. Clapp*, No. 3:12-CV-00108-H, 2012 WL 3150087, at *2 (W.D. Ky. Aug. 2, 2012) (citation omitted). "The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002). Defendants have filed affidavits in support of their motion as **Ex. C** and **Ex. D**, which the Court can examine in support of their requests.

When deciding whether to transfer a case, the Court first considers whether the action could have originally been filed in the transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). If so, the court considers "whether on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the

17

interest of justice.' " *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013) (citing 28 U.S.C. § 1404(a)).

### i.  Dismissal is Appropriate

In this case, dismissal—and not transfer to W.D. of Washington—is appropriate. Plaintiff filed this cases in the wrong court, the resolution of venue is governed by 28 U.S.C. § 1406(a), which provides: The district court of a district in which a case if filed laying venue in the wrong division or district shall dismiss the case, or if it be in the interest of justice, shall transfer such case to any district or division in which it could have been brought. *Id.* Accordingly, this Court has the discretion either to dismiss this case, or transfer it to the Western District of Washington.

It is appropriate for a court to dismiss rather than transfer an action when a plaintiff has "committed an obvious error in filing [its] action in the wrong court, and thereby imposed substantial unnecessary costs on both the defendant and the judicial system." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 (4th Cir. 1993) (affirming a dismissal for lack of personal jurisdiction). In such a circumstance, it would not serve the interests of justice and judicial economy "simply to transfer [the] action to the proper court, with no cost to" Plaintiffs or Plaintiffs' counsel. Id.; *Coté v. Wadel*, 796 F.2d 981, 984-85 (7th Cir. 1986) (Posner, J.) (dismissing rather than transferring an action, even though the statute of limitations had run, because "litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction"). This general rule also is applicable to cases where a plaintiff sues in an obviously improper forum. Although general practice is to transfer a case to a forum where venue is proper, "district courts often dismiss a case, rather than transfer it under Section 1406(a), if the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and * * * similar conduct should be discouraged." 14D WRIGHT, MILLER & COOPER § 3827 & n.37.

The Plaintiff could have brought her case in the U.S. District Court for the Western District of Washington. Also, a substantial part of the alleged conduct that gave rise to her complaint

18

occurred in the State of Washington. It is black letter law that the "substantial part" venue inquiry focuses on "where the allegedly unlawful actions occurred and the place where the harms were felt. 14D WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE § 3806.1 (Westlaw 2008); see also *State Farm Mut. Auto. Ins. Co. v. Bussell*, 939 F. Supp. 646, 650 (S.D. Ind. 1996) (Barker, C.J.); *Adrian v. United States*, No. Civ. A. 04-1721, 2006 WL 763076, *2 (D.D.C. Mar. 13, 2006) (Walton, J.) (finding no venue under Section 1391(b)(2) . . . when "all of the allegedly injurious acts occurred in" another state). Here, the case for dismissal is strong based on the face of the Complaint alone.

### ii.  <u>Considerations for Transferring the Case to the Western Dist. of Washington</u>

Courts within the Sixth Circuit have identified nine factors that the Court should consider in making the determination to transfer a case. These factors include (1) convenience of witnesses; (2) location of relevant documents and relative ease of access to sources of proof; (3) convenience of the parties; (4) locus of the operative facts; (5) availability of process to compel the attendance of unwilling witnesses; (6) relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight granted the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Pharmerica Corp. v. Crestwood Care Ctr.*, L.P., No. 3:12-CV-00511-CRS, 2013 WL 5425247, at *1 (W.D. Ky. Sept. 26, 2013). The moving party bears the burden of establishing that the balance of relevant factors weighs in favor of transfer. *Adams v. Honda Motor Co*., No. CIV.A. 3:05CV120-S, 2005 WL 3236780 (W.D. Ky. Nov. 21, 2005). Although "the plaintiff's choice of forum should rarely be disturbed ... unless the balance [of convenience] is strongly in favor of the defendant," *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the plaintiff's choice is not dispositive. *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 413 (6th Cir. 1998). Instead, the court's decision must be based on an "individualized, case-by-case consideration of convenience and fairness" that accords due consideration and appropriate weight to every relevant factor. *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

The Defendants are domiciled in the Western District of the State of Washington. Venue is proper in Washington. The transfer to Washington would serve the interest of justice. See 28 U.S.C. § 1406(a); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962). The Defendants' witnesses, including police officers who investigated and found them of not having committed any crimes or wrongdoing, are all located in the Western Dist. of Washington. The evidence, including the physical location where the alleged misconduct occurred, and the ease of access to the sources of proof lean in favor of the Western Dist. of Washington. Defendants work and reside in Washington, and so it is more convenient and affordable for them to defend a case in the Western District of Washington. It would be much easier for the court to compel the attendance of unwilling witnesses, all of which who reside in Washington, to attend and testify. The Jackson Defendants are of average means, and cannot afford to travel and defend a case in Michigan. The Western District of Washington has familiarity with the federal question at issue in this case. Last, in the interest of trial efficiency and the interests of justice, based on the totality of the circumstances, this case should be transferred to the Western District of Washington in the event that this Court doesn't grant Defendants' request for a dismissal.

### Federal Rules Civ. Pro 12(b)(5)

The Jackson Defendants also ask this Court pursuant to Fed. R. Civ. P. 12(b)(5) to quash the summons that were served on the Jackson Defendants and to dismiss Plaintiff's Complaint due to insufficient service of process. Both of the Jackson Defendants were served on March 10, 2023 by a process server in Puyallup, Washington. See Returns of Services, RE 8 and 9, Page ID 90-91. Fed. R. Civ. P. 4(k) defines the territorial limits of Effective Service. Specifically, Rule 4(k)(1) states in part as follows:

1.  In General. Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:

    A.  Who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;

Further, Fed. R. Civ. P. 4(k)(2) states as follows:

2.      Federal Claim Outside State-Court Jurisdiction.  For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

A.      The defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

B.      Exercising jurisdiction is consistent with the United States Constitution and laws.

Plaintiff chose to file the Complaint in the Western District of Michigan.  Therefore, pursuant to Rule 4(k), the individual Jackson Defendants should have been served within the State of Michigan.  See, e.g., *Voice Systems Marketing Co., L.P. v. Appropriate Technology Corp.*, 153 F.R.D. 117, 28 Fed. R. Serv.3d 1119 (1994).  However, the Returns of Services that were filed by Plaintiff reflect that the Jackson Defendants were not served within the State of Michigan, but were instead served within the State of Washington.  In order for service to be proper and effective over the Jackson Defendants, service must be made within the State of Michigan. Further, "[d]ue process requires service of process in order to obtain *in personam* jurisdiction over an individual defendant. " See, e.g., *Sawyer v Lexington-Fayette Urban County Government*, 18 Fed. Appx 285, 287 (2001).  It is the Plaintiff's burden to perfect lawful service of process on an individual defendant and to show that the proper service was made. *Id.*  Therefore, because service was not made upon the Jackson Defendant's within the State of Michigan, the Jackson Defendants respectfully request that this Court quash the summons served on them in the State of Washington and also dismiss Plaintiff's Complaint pursuant to 12(b)(5).

### III.      Conclusion

Plaintiff's complaint against Defendant James Jackson and Defendant Lucas Jackson must be dismissed for lack of personal jurisdiction, improper venue, and for insufficient service. Michigan does not have general jurisdiction over the Jackson Defendants, as outlined above, and Plaintiff did not plead any facts which would subject the Defendants to Michigan's long-arm jurisdiction. Even if the Defendants met the requirements of Michigan's long-arm jurisdiction, subjecting them to Michigan jurisdiction in this case would violate the Defendant's Constitutional

rights. Next, this case should be dismissed because the Western District of Michigan is not the proper forum and the case's dismissal or transfer to the Western District of Washington would serve the interests of justice. Last, this summons should be quashed and the case dismissed pursuant to Fed. R. Civ. P. 12(b)(5) due to insufficient service of process.

Respectfully submitted,

Dated: <u>March 31, 2023</u>

Bolhouse, Hofstee & McLean, P.C.

By: <u>/s/ *Michelle M. McLean*</u>
Michelle M. McLean (P71393)

Grandville State Bank Building
3996 Chicago Drive SW
Grandville MI 49418
Phone: (616) 531-7711

Attorneys for Defendants James Jackson and Lucas Jackson