## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SARAH, | |
| Plaintiff, | CASE NO.: 1:23–CV–00223 |
| v. | HON. HALA Y. JARBOU |
| GOOGLE LLC, YOUTUBE LLC, JAMES JACKSON, also known online as "ONISION," and LUCAS JACKSON, formerly known online as "LAINEYBOT," "LAINEY" and "KAI," | |
| Defendants. | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS GOOGLE LLC AND YOUTUBE LLC'S MOTION TO DISMISS COMPLAINT

**TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................... 1

TABLE OF AUTHORITIES .................................................. 3

CONCISE STATEMENT IN SUPPORT OF PLAINTIFF'S POSITION. 1

STATEMENT OF FACTS.................................................... 4

ARGUMENT ....................................................................... 5

I.    SECTION 230 IMMUNITY IS NOT APPLICABLE AND DOES
      NOT BAR PLAINTIFF'S CLAIMS .................................... 6

      A.   Plaintiff's Claims Do Not Seek to Treat the YouTube Defendants
           as a Publisher or User of Third–Party Content ...........................6

      B.   CDA 230 Does Not Apply Because The YouTube Defendants Had
           An Agency And Profit-Sharing Relationship with Onision Derived
           From The YPP Agreement .............................................8

           1.   The YouTube Defendants' Have an Agency Relationship
                with Onision ...................................................9

           2.   Onision is in a Profit-Sharing Relationship with the
                YouTube Defendants .................................... 10

II.   PLAINTIFF'S 18 U.S.C. §2255 CLAIMS SHOULD NOT BE
      DISMISSED PURSUANT TO RULE 12(B)(6)................................ 13

      A.   The YouTube Defendants Have Vicarious or Secondary Liability
           Pursuant to 18 U.S.C. § 2255.................................... 13

      B.   Plaintiff has Plausibly Alleged That the YouTube Defendants
           Committed the Alleged Predicate Acts for a Violation of 18 U.S.C.
           §§1591 and 2422 as well as their Civil Remedy 18 U.S.C. §225517

1

III.    **PLAINTIFF'S 18 U.S.C. §1595 CLAIMS SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(B)(6)** ................................ **19**

A.    (Element 1) Knowing Benefit ........................................................ 20

B.    (Elements 2 and 3) Participation in a Venture that Violated the TVPRA as to Plaintiff .................................................................... 20

C.    (Element 4) Defendants Had Actual or Constructive Knowledge ........................................................................................... 25

**CONCLUSION** ................................................................................... **28**

**CERTIFICATE OF COMPLIANCE RE. WORD COUNT** ........................ **30**

**PROOF OF SERVICE** ....................................................................... **31**

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 6

*Bostock v. Clayton County, Georgia,* 140 S. Ct. 1731 (2020) ........................... 15

Capitol City Lodge No. 141, FOP v. Meridian Twp., 90 Mich.App. 533, 282
    N.W.2d 383 (Mich. Ct. App. 1979) .................................................................. 9

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003) .................. 7

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) ..................passim

*Doe v. Boland*, 698 F.3d 877 (6th Cir. 2012) ..................................................... 13

*Doe v. Internet Brands,* 824 F.3d 846 (9th Cir. 2016) .................................. 7, 8

*Doe v. Liberatore,* 478 F.Supp.2d 742 (M.D.Pa. 2007) .................................... 15

*Doe v. Peterson*, 784 F. Supp. 2d 831 (E.D.Mich. 2011) ........................... 11, 12

*Doe v. Schneider,* No. 08-3805, 2013 WL 5429229 (E.D.Pa. 2013) ................ 15

*Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146 (C.D.Cal. 2022)....... 26, 27

Friends of Everglades v. So. Fla. Water Mgmt. Dist., 570 F.3d 1210 (11th
    Cir.2009) ........................................................................................................ 15

*Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021), *cert. vacated and
    remanded*, 143 S. Ct. 1191 (2023) .................................................................. 7

*HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019)... 7

*Imhoff Invest., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015)............ 16

*In re Hotel TVPRA Litig.,* No. 2:22-CV-1924, 2023 WL 3075851  (S.D.Ohio
    Apr. 25, 2023) ........................................................................................ 14, 15, 18

*In re Jt. Pet. Filed by Dish Network, LLC,* 28 F.C.C.R. 6574 (2013) .............. 16

*In re Silver*, 647 B.R. 897 (Bankr.E.D.Mich. 2022)............................................ 9

Int'l Longshoremen's Ass'n, AFL–CIO v. NLRB, 56 F.3d 205 (D.C.Cir. 1995) 9

*Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F.Supp.2d 1337
(S.D.Fla. 2012) ....................................................................... 14, 15

*Johansen v. HomeAdvisor, Inc.,* 218 F.Supp.3d 577 (S.D.Ohio 2016) ............ 16

Jones v. Dirty World Entm't Recordings LLC, 755 F.3d 398 (6th Cir. 2014)6, 7

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015) ............. 16

*M.A. ex rel. P.K. v. Village Voice Media Holdings*, LLC, 809 F.Supp.2d 1041
(E.D.Mo. 2011) ........................................................................... 16

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D.Ohio 2019)
..................................................................................... 24

*M.H. v. Omegle.com, LLC,* No. 8:21-CV-814-VMC-TGW, 2022 WL 93575
(M.D.Fla. Jan. 10, 2022) ................................................................ 19

*McIntyre v. Kavanaugh*, 242 U.S. 138 (1916).................................................. 11

*New York v. Ferber,* 458 U.S. 747 (1982)................................................... 17, 18

*O'Kroley v. Fastcase, Inc.*, 831 F.3d 351 (6th Cir. 2016) .................................. 6

*People v. Ferber*, 52 N.Y.2d 674 (1981), rev'd sub nom................................... 18

*Ramsbottom v. Ashton,* No. 3:21-CV-00272, 2022 WL 106733 (M.D.Tenn. Jan.
11, 2022)................................................................................. 16

*Ricchio v. McLean,* 853 F.3d 553 (1st Cir. 2017)............................................ 24

*Ross v. Ihrie*, No. 05–71420, 2006 WL 3446897 (E.D.Mich. Nov. 28, 2006) ... 12

*Saums v. Parfet*, 270 Mich. 165, 258 N.W. 235 (Mich. 1935) ........................... 9

*Smith v. Husband,* 376 F. Supp. 2d 603 (E.D.Va. 2005) ................................. 18

Smith v. Husband, 376 F.Supp.2d 603 (E.D.Va.2005) ................................... 15

*United States v. Copeland*, 820 F.3d 809 (5th Cir. 2016) ............................... 18

*United States v. Henry*, 983 F.3d 214 (6th Cir. 2020)................................... 14

*United States v. Parrett*, 530 F.3d 422 (6th Cir. 2008) .................................. 14

*Universal Comm'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007)....... 7

**Statutes**

18 U.S.C. § 1591 ........................................................................... 13, 18

18 U.S.C. § 2422 ............................................................................... 13

18 U.S.C. §2255 ......................................................................... 13, 17

47 U.S.C. §230(c) ................................................................................ 6

**Other Authorities**

*Restatement (Third) of Agency* § 1.01 (2006) ................................... 16

**Rules**

Rule 12(b)(6) ........................................................................... 5, 13, 19

## CONCISE STATEMENT IN SUPPORT OF PLAINTIFF'S POSITION

Google and YouTube ("YouTube Defendants") filed a Motion to Dismiss alleging that (1) Section 230 of the Communications Decency Act ("CDA 230") immunizes the YouTube Defendants, (2) that Plaintiffs 18 U.S.C. § 2255 ("Masha's Law") claims fail to state a claim upon which relief can be granted, and (3) that Plaintiff's sex trafficking claims pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA") fail to state a claim upon which relief can be granted.

CDA 230 does not provide immunity because Plaintiff's claims do not seek to treat the YouTube Defendants as a publisher or user of third-party content; rather, they seek to hold the YouTube Defendants liable for their own conduct. Additionally, YouTube entered into a contractual relationship with James Jackson ("Onision") which created an agency and profit–sharing relationship with YouTube. Onision was an agent of the YouTube Defendants and therefore the YouTube Defendant are liable for Onision's actions. As partners in a profit-sharing partnership, the YouTube Defendants had a duty to oversee what Onision was doing and is liable for his tortious conduct that occurred in the ordinary course of the partnership's business.

Plaintiff's Masha Law claims seek to hold the YouTube Defendants vicariously or secondarily liable for Onision's conduct. The YouTube Defendants claim that that vicarious and secondary liability is not permitted

pursuant to section 2255, however, statutory construction clearly permits such secondary liability. The statute is silent on *who* can be sued and as such interpreting that silence to mean that only the perpetrator of the underlying criminal act can be sued requires this court to effectively add words to the statute by adding in a limitation on *who* can be sued. Masha's Law only requires the plaintiff to prove by a preponderance of the evidence that a violation of the predicate act occurred – it does not limit who can be liable for such a violation. Additionally, in order to support vicarious liability, Defendant's agency relationship does not need to be formal; it can informally exist if the YouTube Defendants ratified Onision's actions which they did through their full control over ad placement, revenue collection, the Partnership contract between YouTube and Onision, and YouTube's ability to and eventual demonetization of Onision.

Plaintiff's Masha's Law claims plausibly allege that YouTube violated Masha's Law, 18 U.S.C. §2255. For a plaintiff to plausibly allege a violation of Masha's Law, the plaintiff does not have to allege that the civil defendant is the same as the criminal defendant. Rather, Plaintiff only must allege that Plaintiff is a victim of a violation of the predicate statutes (18 U.S.C. §§ 1591 or 2422). Plaintiff has sufficiently alleged that she was a victim of both predicate statutes, was a minor when they occurred, and was injured because

of that violation of the predicate statute(s). Plaintiff has adequately pled her section 2255 claims and should obtain discovery on those claims.

Plaintiff's TVPRA claims plausibly alleges that YouTube violated the TVPRA, 18 U.S.C. §1595. For a plaintiff to adequately plead a violation of the TVPRA, the plaintiff must plausibly allege facts that a defendant (1) knowingly benefited, (2) from participation in a venture, (3) that the venture violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

In this case, Plaintiff alleges that the YouTube Defendants benefitted from the monetization and profit–sharing agreement they had with Onision. Plaintiff alleges that Onision created a dangerous environment for children online in which he was luring, enticing, and recruiting them through the YouTube platform. Plaintiff alleges that the YouTube Defendants were notified more than once about Onision's activities and after gaining knowledge of what he was doing, the YouTube Defendants elected to continue profiting from such a venture. Further, Plaintiff alleges that Onision and YouTube had a continuous business relationship with an established pattern of conduct that was akin to a tacit agreement, supporting Plaintiff's allegation that the YouTube Defendants were participating in a venture in violation of the TVPRA. Finally, Plaintiff alleges that the YouTube

Defendants had actual or constructive knowledge of the ongoing luring and enticing of children through Onision's channels yet continued to give him the means and encouragement to continue – they were paying him to do so as part of their YPP contract. Plaintiff has adequately pleaded her section 1595 claims and should obtain discovery on those claims. The YouTube Defendants Motion to Dismiss should be denied.

## STATEMENT OF FACTS

Google is the parent company of YouTube and has monetized the YouTube platform through advertising revenue and subscription services. (PageID.13 ¶77). YouTube offers eligible content creators the opportunity to join its YouTube Partnership Program ("YPP"). YPP partners enter a contractual relationship with YouTube in which the partner agrees to abide by YouTube's Terms of Service ("TOS") and in exchange will receive 55% of the advertising revenue made from their channel (PageID.1–15 ¶¶80–83, 86). Joining the YPP is optional, but if someone becomes a YPP Partner, Google fully controls which ads are matched with and placed on a Partner's page meaning that Google controls if and how a YPP Partner makes money. (PageID.15 ¶¶83–84). Further, Google's non–neutral algorithm promotes selected videos to increase profits. (PageID.17 ¶ 95).

Defendant James Jackson ("Onision") joined the YPP and became monetized. (PageID.20 ¶115). Around 2012, Onision and his spouse Lucas

Jackson ("Lainey") (collectively the "Jackson Defendants") began working together to groom and lure underage girls through the Onision YouTube channels and online forums as part of the YPP. (PageID.26 ¶¶146–150, PageID.27 ¶156–158). Independent of what was posted on its platform, YouTube was notified about the Jackson Defendants and their luring and enticing of children. Concerned citizens began reaching out to YouTube, complaining about Onision's grooming tactics, the harm he was causing his minor audience, and many requested that YouTube revoke Onision's YPP Agreement. (PageID.21–22 ¶¶118, 120–124). YouTube elected to continue the profit–sharing relationship with Onision and thereby acquiesced with the dangerous environment he was creating. (PageID.23 ¶¶129).

Sometime after this, Plaintiff Sarah, who was within the target audience age of 13 years old, was lured, enticed, and recruited by Onision's dangerous online environment causing her to be victimized as a child. (PageID.30 ¶¶177).

The YouTube Defendants filed their Corrected Motion to Dismiss Plaintiff's complaint on May 22, 2022.

## ARGUMENT

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Bell Atl. Corp. v. Twombly,*

550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## I.  SECTION 230 IMMUNITY IS NOT APPLICABLE AND DOES NOT BAR PLAINTIFF'S CLAIMS

The YouTube Defendants claim that Plaintiff's claims should be dismissed because they have immunity pursuant to Section 230 of the Communications Decency Act ("CDA 230"). Plaintiff's claims fall outside of CDA 230 for two reasons. First, Plaintiff's claims do not seek to treat the YouTube Defendants as a publisher or user of third–party content. Second, the YPP creates an agency / profit–sharing relationship with YouTube which changes the YouTube Defendant's duty and anchors liability which is outside the scope of CDA 230's immunity provisions.

### A.  Plaintiff's Claims Do Not Seek to Treat the YouTube Defendants as a Publisher or User of Third–Party Content

CDA 230 only provides immunity from claims that seek to treat an ICS as a publisher or user of third–party content. *O'Kroley v. Fastcase, Inc.*, 831 F.3d 351 (6th Cir. 2016) (referencing *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 409 (6th Cir. 2014)); 47 U.S.C. §230(c). CDA immunity is not so broad as to attach any time a legal duty *might* lead a company to respond with monitoring or other publication activities. Rather, it attaches

when the duty would *require* an internet company to monitor third–party content. *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019) (city ordinance did not require the online platforms to monitor third–party content and thus fall outside of CDA 230 immunity); *Gonzalez v. Google LLC*, 2 F.4th 871, 898–99 (9th Cir. 2021), *cert. vacated and remanded*, 143 S. Ct. 1191 (2023) (plaintiff's revenue–sharing allegations were not directed to any third–party content that Google should have allegedly removed and therefore CDA 230 is not applicable).

In order to claim immunity pursuant to the plain language of CDA 230, a defendant must establish (1) that the defendant is an ICS, (2) the relevant information was provided by another user, and (3) the plaintiff's claim seeks to treat the defendant as the publisher or user of that information. *Jones,* 755 F.3d at 409 (citing *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007)).

Defamation is a classic cause of action that treats a website as a publisher because the action is founded on the website hosting defamatory third–party content. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003). In contrast, *Doe v. Internet Brands,* 824 F.3d 846, 848–49 (9th Cir. 2016) was a case in which the defendant learned—through sources other than by monitoring postings online—that two sexual predators were pretending to be talent agents on their website, modelmayhem.com. The

predators would then lure the victims to a location where they would drug and rape them and create pornography of the attack for sale and distribution. In that case, the court held that CDA 230 did not attach because the plaintiff did not seek to hold Internet Brands as the "publisher or speaker" of content on modelmayhem.com, but instead brought a claim for the defendant's failure to warn based on information acquired through means other than monitoring posts. *Id.* at 851.

In this case, Plaintiff's claims do not seek to treat the YouTube Defendants as the publisher or speaker of Onision's content. None of Plaintiff's claims require YouTube or Google to monitor Onision's content, nor does Plaintiff contend that specific content or the channel(s) should have been edited or removed by the YouTube Defendants. Like *Internet Brands*, Google and YouTube were made aware of Onision's conduct through alternative means—complaints made to the company. (PageID.21–23 ¶ 120–124). Plaintiff's allegations seek to hold the YouTube Defendants accountable for their conduct, not Onision's content.

### B. CDA 230 Does Not Apply Because The YouTube Defendants Had An Agency And Profit-Sharing Relationship with Onision Derived From The YPP Agreement

Unlike a typical third–party publisher that posts on the site but lacks any further connection to YouTube, Onision became an agent and contractor

8

in a profit-sharing relationship with YouTube and was, in effect, hired and compensated to create and post content on the YouTube website.

### 1.     The YouTube Defendants' Have an Agency Relationship with Onision

YouTube crated a contractual relationship with Onision through their YPP. The Michigan Supreme Court has determined that an agency relationship exists where "one person acts for or represents another by his authority." *Saums v. Parfet*, 270 Mich. 165, 258 N.W. 235, 237 (Mich. 1935). Further, an agent is a "business representative" whose function is to "bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons." *Id.* at 235. Finally, an agent has the right to "control the conduct of the agent with respect to the matters entrusted to him." *In re Silver*, 647 B.R. 897, 918 (Bankr. E.D.Mich. 2022) (citing *Int'l Longshoremen's Ass'n, AFL–CIO v. NLRB*, 56 F.3d 205, 211 (D.C.Cir. 1995) and *Capitol City Lodge No. 141, FOP v. Meridian Twp.*, 90 Mich.App. 533, 282 N.W.2d 383 (Mich. Ct. App. 1979).

YouTube created a contractual agreement with Onision and in exchange for creating and posting content, Onision was given a monetized YouTube platform in which Google's AdSense would place advertisements on his page to make both Onision and YouTube money. (PageID.5 ¶¶23-24). Google AdSense had full decision making concerning the ads, including ad

9

placement, revenue collection, and payment to the YPP Partner Onision. (PageID.15 ¶83). In exchange, Onision agreed to follow and abide by the YouTube Terms of Service and Community Guidelines ("TOS"). (PageID.5 ¶25). YouTube could revoke the profit–sharing relationship for any infraction of the TOS and therefore controlled Onision's profit–sharing, conduct, and what he could publish on the platform. (PageID.5 ¶26).

As such, the facts meet the Michigan Supreme Court's test for an agency relationship. ***First***, the YPP and contract mandated that Onision was a representative of YouTube since he was being paid by YouTube not only to post content, but was also profit–sharing with YouTube for that same content. (PageID.15 ¶82). ***Second***, Onision's function was to bring about, affect, and accept performance of his YPP contractual relationship with his principal (YouTube/Google) and third parties (advertisers). ***Finally,*** the TOS governs the content creator's conduct, both online and offline, placing YouTube in substantial control over the activities of Onision and other YPP partners. (PageID.52 ¶335). This constitutes an agency relationship.

### 2.   *Onision is in a Profit-Sharing Relationship with the YouTube Defendants*

The YouTube Defendants contracted with Onision to facilitate a profit–sharing relationship. (PageID.20 ¶115). YouTube paid Onision 55% of ad revenue generated from the content he posted. (PageID.15 ¶82). Onision

agreed to post content within the restrictions of the TOS Agreement ((PageID.15 ¶86), and Google matched the content Onision created with advertisers, and decided what ad appeared, tracked the views, and recommended content through their algorithm. (PageID.15-16 ¶83–84, 88). Furthermore, Google's non–neutral algorithm was designed to help its paid content creators, like Onision, maximize their shared profit by recommending videos and driving viewers to their pages. (PageID.16-17 ¶88, 92-94). In other words, Onision created the content and Google placed ads on his YouTube page, driving viewers to the page with ads thereby monetizing the content. In this way, YouTube and Onision were in a true partnership (called the YouTube Partnership Program), where each contributed to the joint profit– seeking enterprise, and each shared in the profits generated from the same. They are two sides of the same coin – YouTube needs its content creators, like Onision, and Onision needs to get paid through monetization.

"Generally, partners are individually liable for torts committed by their firm or other partners when they are acting within the scope of its business whether they personally participate or not." *Doe v. Peterson*, 784 F.Supp.2d 831, 844–45 (E.D.Mich. 2011) (citing *McIntyre v. Kavanaugh*, 242 U.S. 138, 139 (1916)). "This is true even if the defendant has no knowledge of his partner's wrongdoing." See *McIntyre*, 242 U.S.at 140 (holding defendant personally liable even though other members of his firm engaged in fraud

without his authority, knowledge, or consent). To determine if liability

attaches to an unknowing partner, the conduct must be "performed within

the ordinary course of the partnership's business." *Peterson*, 784 F.Supp.2d at

844–45 (citing *Ross v. Ihrie*, No. 05–71420, 2006 WL 3446897, at *7

(E.D.Mich. Nov. 28, 2006) ("The act of every partner, who carries on the usual

business of the partnership, binds the partnership-unless the partner has no

authority to act in the particular matter, and the person with whom the

partner is dealing is aware that the partner lacks authority.")

    In this case, Plaintiff pleaded that Onision created YouTube channel(s)

that were posting content which was in the ordinary course of the

partnership's business. Onision posted material that would lure and entice

children and created a dangerous environment through his channel(s) thus

creating liability for the partnership.

    Most importantly, because this was a partnership, the normal CDA 230

caveat that YouTube does not need to monitor the content of its website does

not apply. Onision was not an unknown third–party posting on YouTube's

website; rather, he was YouTube's partner, was in a business venture with

YouTube, and YouTube had a duty to monitor the content of his website as

part of the joint venture. Because of this partnership, YouTube is liable for

the Jackson Defendant's conduct on their YouTube channel.

## II.   PLAINTIFF'S 18 U.S.C. §2255 CLAIMS SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(B)(6)

Plaintiff's 18 U.S.C. §2255 ("Masha's Law") claims are predicated on violations of two federal criminal statutes: (1) 18 U.S.C. § 1591(a) (Count III, sex trafficking); and (2) 18 U.S.C. § 2422 (Count IV, coercion and enticement). Section 2255 provides a civil remedy to any person who can show by a preponderance of the evidence that, while a minor, that person was a victim of one of numerous predicate criminal acts. *Doe v. Boland*, 698 F.3d 877, 880 (6th Cir. 2012). The YouTube Defendants claim that Plaintiff's allegations should be dismissed because section 2255 does not provide for vicarious or secondary liability. This is wrong.

### A. The YouTube Defendants Have Vicarious or Secondary Liability Pursuant to 18 U.S.C. § 2255

The YouTube Defendants claim that section 2255 does not permit vicarious or secondary liability and therefore the claims must be dismissed.[1] YouTube stated incorrectly that this matter is "well settled," yet there is a split amongst district courts as to this issue across the nation. Nonetheless, statutory construction clearly permits such secondary liability. *See Jane Doe*

---

[1] The YouTube Defendants gloss over the fact that YouTube and Google were not only in a secondary liability role; they were also in the role of profit–sharing with Onision. (PageID.2, 5 ¶¶ 1, 22).

13

*No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F.Supp.2d 1337, 1340 (S.D.Fla. 2012); *In re Hotel TVPRA Litig.*, No. 2:22-CV-1924, 2023 WL 3075851, at *7 (S.D.Ohio Apr. 25, 2023).

To conduct statutory interpretation, the inquiry must begin with the plain language of the statute. *United States v. Henry*, 983 F.3d 214, 218 (6th Cir. 2020). If the statutory language is not clear, then the court should turn to the statute's legislative history. *Id.* (citing *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008)).

Looking at the plain text, 18 U.S.C. §2255(a) states:

> "Any person who, while a minor, was a victim of a violation of [§1591, 2242] and who suffers personal injury as a result of such violation … may sue in any appropriate United States District Court…"

The statute is silent on who may be sued. YouTube Defendants have asked this Court to essentially rewrite the statute to read:

> "Any person who, while a minor, was a victim of a violation of [§1591, 2242] and who suffers personal injury as a result of such violation … may sue **AN OFFENDER OR DIRECT PERPETRATOR** in any appropriate United States District Court…"

Had Congress intended such a limitation on who could be sued, it would have codified the same; it did not. *Bostock v. Clayton County, Georgia,* 140 S. Ct. 1731, 1738 (2020) (courts must interpret a statute based on the ordinary meaning and not add or subtract words through judicial

14

interpretation); *Friends of Everglades v. So. Fla. Water Mgmt. Dist.,* 570 F.3d 1210, 1224 (11th Cir.2009) (courts cannot add or subtract words from a statute when interpreting its meaning). As such, to limit liability to only the direct perpetrators of the predicate acts underlying §2255 would add words to the statute not codified by Congress. *Royal Caribbean*, 860 F.Supp.2d at 1341.

The YouTube Defendants wish to treat the criminal predicate acts as equivalent to 18 U.S.C. §2255 by demanding only the perpetrator of the underlying criminal act can be liable civilly. This again fails because Congress created the predicate criminal offenses and §2255 for different purposes. It does not follow that there must be symmetry in liability. *In re Hotel TVPRA Litig.*, No. 2:22-CV-1924, at *7 (citing *Royal Caribbean*, 860 F.Supp.at 1340). "[W]hile §2255 requires that the victim sustain an injury "as a result" of a predicate criminal violation, that causation requirement does not mean that only the criminal offender may be held liable." *Royal Caribbean,* 860 F.Supp.2d at 1343. Masha's Law only requires that the plaintiff has to prove by a preponderance of the evidence that a violation of the predicate act occurred – it does not limit who can be liable for such a violation. *Smith v. Husband,* 376 F.Supp.2d 603, 613 (E.D.Va.2005), *Doe v. Liberatore,* 478 F.Supp.2d 742, 756 (M.D.Pa. 2007); *Doe v. Schneider,* No. 08-3805, 2013 WL 5429229, at *11 (E.D.Pa. 2013); *M.A. ex rel. P.K. v. Village*

*Voice Media Holdings*, LLC, 809 F.Supp.2d 1041, 1053-55 (E.D.Mo. 2011) (same).

As previously discussed *infra*, Onision was an agent of the YouTube Defendants. (PageID.2, 5 ¶1, 22). "[F]ederal common law principles of agency" apply here. *In re Jt. Pet. Filed by Dish Network, LLC,* 28 F.C.C.R. 6574, 6574 (2013) ("[A] seller ... may be held vicariously liable under federal common law principles of agency for violations […] committed by third-party telemarketers."); *Imhoff Invest., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015) ("The DISH Network decision ... found that the seller may be vicariously liable for such violations under federal common law agency principles."). Vicarious liability need not "require a formal agency relationship; it may also be based on principals of apparent authority and ratification." *Ramsbottom v. Ashton,* No. 3:21-CV-00272, 2022 WL 106733, at *19 (M.D.Tenn. Jan. 11, 2022) (quoting *Johansen v. HomeAdvisor, Inc.,* 218 F.Supp.3d 577, 584 (S.D.Ohio 2016)) (internal quotes omitted); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 372 (6th Cir. 2015). Ratification of the agent's acts occurs when the principal manifests assent or otherwise consents to the agent's actions. *Keating*, 615 F.App'x at 372 (citing *Restatement (Third) of Agency* § 1.01 (2006)). The YouTube Defendants had an informal agency relationship with Onision. They had apparent authority over Onision in that Google AdSense controlled all ad placement, revenue

16

collection, and distribution of money to Onision. (PageID.5, 15 ¶23, 83).

Onision was bound by the YPP contract which controlled his conduct and the

money he made. (PageID.5, 15 ¶22, 82). Most telling, when YouTube elected

to demonetize Onision in 2021, it did so because of Onision's on and offline

behavior and cut off his ability to profit from his content. (PageID.51-52

¶¶334-35). Not long thereafter, in 2022, Onision published his "Goodbye

Video" from YouTube (PageID.49 ¶321), which exhibits the power and control

YouTube exerted – when they cut off his revenue stream, he went from

posting constantly as a professional "YouTuber" in partnership with

YouTube, to issuing his "Goodbye Video" and leaving YouTube.

### B. Plaintiff has Plausibly Alleged That the YouTube Defendants Committed the Alleged Predicate Acts for a Violation of 18 U.S.C. §§1591 and 2422 as well as their Civil Remedy 18 U.S.C. §2255

The YouTube Defendants claim that Plaintiff's allegations should be

dismissed because the claims do not plausibly allege that YouTube violated

the Masha's Law, 18 U.S.C. §2255. This argument fails.

The YouTube Defendants were party to predicate violations committed

against Plaintiff and Section 230 does not shield the YouTube Defendants

from her claims. Like the defendant in *New York v. Ferber,* 458 U.S. 747, 758

(1982), who was a bookstore proprietor and the so–called "third party"

conduit for child pornography, the Defendants are liable to Plaintiff here.

*People v. Ferber*, 52 N.Y.2d 674, 677 (1981), rev'd sub nom. *Ferber,* 458 U.S. In *United States v. Copeland*, 820 F.3d 809, 814 (5th Cir. 2016), the Fifth Circuit echoed this determination that "Congress can—and often does— reduce or eliminate scienter requiring knowledge of a minor victim's age in sex crimes." Plaintiff's allegations sufficiently support her claims that YouTube Defendants "ignored their statutory obligation not to benefit financially from a sex trafficking venture. *See* 18 U.S.C. §1591(a)(2) ("whoever knowingly ... benefits, financially or by receiving anything of value, from participation in a [sex trafficking] venture" shall be punished as provided in this section). *N.S. v. Rockett,* No. 3:16-CV-2171, 2018 WL 6920125, at *5 (D. Or. Oct. 19, 2018) (finding allegations of an attempted violation of a predicate sufficient to support 18 U.S.C. §2255 claims). See *In re Hotel TVPRA Litig.,* No. 2:22-CV-1924 at *9. Similarly, "Masha's Law does not require a defendant to be criminally convicted of the predicate offense, and it is enough to prove by a preponderance of the evidence that the defendant violated the enumerated statute." *Id.* at *8. See *Smith v. Husband,* 376 F. Supp. 2d 603, 611–12 (E.D.Va. 2005) (finding liability absent a criminal conviction).

### III.   PLAINTIFF'S 18 U.S.C. §1595 CLAIMS SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(B)(6)

The YouTube Defendants claim that Plaintiff's allegations should be dismissed because the claims do not plausibly allege that YouTube violated the TVPRA, 18 U.S.C. §1595. This argument fails.

The Sixth Circuit has not opined on how to interpret beneficiary liability pursuant to 18 U.S.C. §1595. The only federal circuit court to offer a test to determine if a §1595 claim should be allowed to continue to discovery has been the Eleventh Circuit in the case of *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021). In *Red Roof*, the Eleventh Circuit held that to prevail on a civil claim under §1595, a plaintiff must plausibly allege facts that a defendant (1) knowingly benefited (2) from participation in a venture, (3) that the venture violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff. *Id.* at 723-24. A federal circuit court has not yet determined how this test applies to an internet company. *See M.H. v. Omegle.com, LLC,* No. 8:21-CV-814-VMC-TGW, 2022 WL 93575, at *1 (M.D.Fla. Jan. 10, 2022) (appeal pending on TVPRA claim against online company).

### A. (Element 1) Knowing Benefit

The first element requires the Court to address if the YouTube Defendants *knowingly benefited by receiving some value* for participation in the alleged venture, which is not disputed. *Red Roof,* 21 F.4th at 723. Plaintiff has plainly alleged that "Google monetizes its YouTube platform. (PageID.13 ¶77). YouTube generated billions of dollars in revenue, of which a massive amount comes from advertising. (PageID.14 ¶78). YouTube offers its creators the ability to join the YPP which allows creators to enter into a contractual, profit-sharing relationship with YouTube and Google for the ad revenue generated from their YouTube channel(s). (PageID.14, 15, 17, 18 ¶¶ 80-82, 96, 99). Google uses its AdSense program to match individual ads to the YouTube website based on content and visitors to maximize profits. (PageID.5, 22 ¶¶ 24, 122). YouTube entered into the YPP profit-sharing contractual relationship with Onision for the ad revenue generated from his YouTube channels. (PageID.5 ¶¶ 23-24).

### B. (Elements 2 and 3) Participation in a Venture that Violated the TVPRA as to Plaintiff

The second and third elements require the Court to determine if the YouTube Defendants knowingly benefited from *participation in a venture* that violated the TVPRA as to the Plaintiff. *Red Roof,* 21 F.4th at 723. In the context of a civil suit, participation in a venture means that the defendants

20

"took part in a common undertaking or enterprise involving risk and potential profit." *Id.* at 725.

The YouTube Defendants argue that they did not participate in a venture because although they admit that YouTube engaged in a profit-sharing contractual relationship with Onision, they argue that this agreement is not a venture to engage in sex trafficking. This argument fails to properly analyze the TVPRA, nor does it take into account all of Plaintiffs well-plead facts.

A sex trafficking scheme is not a simple criminal act; like racketeering, it is a complex and multi-step process to locate, groom, and exploit a person and uses legitimate businesses in the process to execute the scheme. **Step one**, the trafficker needs to find, lure, entice, recruit, and solicit the potential victims. Frequently, online websites and platforms are used for this step – in part, because it provides the trafficker with a larger pool of potential victims to choose from, and in part, because conducting this step online provides the trafficker with more anonymity to avoid getting caught. **Step two**, the trafficker will groom and coerce the selected target to become their victim. This can involve promises, threats, violence, love, fraud, deceit, controlled substances, or any other means to prey on that victim's vulnerabilities. Children are particularly susceptible to grooming. **Step three,** the trafficker will exploit their victim. Frequently, hotels and motels

21

are used for this step – the buyers of sex want the security of going to a hotel/motel instead of a private residence where they might get attacked, and the trafficker wants a location that can change easily if the police become aware of what is occurring.

At any stage of this scheme, a business can elect to profit by participating in that portion of the venture. Lawsuits have been brought around the U.S. against internet companies who engage in step one (luring and enticing), and separately, lawsuits have been brought against hospitality businesses, such as hotels and motels, that engage in step three (exploitation). Although the YouTube Defendants are engaged in step one of Onision and Lainey's sex trafficking scheme, the cases analyzing the TVPRA's beneficiary claims under step three are instructive to the case at issue.

While *Red Roof* instructively analyzes what would be needed to participate in a venture in the exploitation phase of a sex trafficking scheme (step 3), different evidence is needed to show what is needed in the luring and enticing phase of a sex trafficking scheme (step 1). Like a hotel operator, the YouTube Defendants operate YouTube, they determine who is eligible and with whom they choose to engage in a contractual profit-sharing relationship with, and they have a long-term, continuous business relationship with their

YPP partners. Pursuant to the contract, YouTube agrees to profit share with its creator, and the creator agrees to abide by the YouTube TOS.

When YouTube was put on notice that its own paid partner, Onision, was violating the TOS through the YouTube platform, it allowed a dangerous environment that was blatantly contrary to its TOS to exist on its platform and continue to lure in young teens. This occurred *prior* to Plaintiff using the platform, making the luring and enticing of Plaintiff foreseeable. (PageID.21-23 ¶ 118-124). In contrast, Plaintiff alleged that VidCon, a convention for video creators, was also put on notice about Onision's luring and recruiting of impressionable and vulnerable children. (PageID.23 ¶ 128). While YouTube elected to maintain a dangerous environment for the purpose of continued profits, VidCon reacted to the notice and complaints about Onision's conduct by cancelling Onision as a speaker at the VidCon convention. (PageID.23 ¶ 128).

In addition, Plaintiff alleges that Onision's channels, through the help of his spouse Lainey, were used as a tool that lured and enticed young children, such as Plaintiff, to begin following Onision and Lainey. (PageID.21 ¶ 117). The YouTube platform was used as a hunting ground so that Onision and Lainey could gain access to YouTube's large pool of young, impressionable children. (PageID.18, 27, 28 ¶¶ 100, 157, 165). Onision or Lainey then encouraged those children to move over to the Onision forums

23

and promoted his forums in almost every video posted on YouTube in order to execute phase 2 of their sex trafficking scheme (grooming phase). (PageID.26-28 ¶¶ 149-165). Plaintiff was one of these victims that was lured and enticed by Lainey and Onision through YouTube's platform. (PageID.29 ¶ 176).

In 2019, the *M.A.* court found that "in the absence of a direct association, Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement.' *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D.Ohio 2019). *M.A.* went on to state that this comports with the First Circuit's holding in *Ricchio v. McLean,* 853 F.3d 553 (1st Cir. 2017) which was adopted by the Eleventh Circuit in *Red Roof*. *Red Roof,* 21 F.4th at 725-26 (referencing *Ricchio*, 853 F.3d at 556-558). Plaintiff plausibly alleged that the YouTube Defendants had a continuous business relationship, which could be deemed to be a tacit agreement. Plaintiff plausibly alleged that she was lured by the dangerous online environment that was created by Onision and the YouTube Defendants, in which Onision was targeting young minors and luring them to his forums to begin grooming these children. Plaintiff was lured and enticed by Onision, and was subsequently groomed.

24

The YouTube Defendants engaged in a common undertaking or enterprise involving risk and potential profit when they entered into a contractual relationship with Onision and agreed to profit share with him based on the content he posted. Through this relationship, they created a long-term, continuous business relationship and have established a pattern of conduct that could be said to be a tacit agreement. Plaintiffs have adequately plead elements 2 and 3.

## C. (Element 4) Defendants Had Actual or Constructive Knowledge

The fourth element requires the Court to determine if the YouTube Defendants had actual or constructive knowledge that the venture violated the TVPRA as to the plaintiff. *Red Roof,* 21 F.4th at 723. The YouTube Defendants argue that Plaintiff has not alleged actual or constructive knowledge. This is not accurate; Plaintiff alleged constructive knowledge in this case, which is recognized pursuant to §1595.

In *Fleites v. Mindgeek*, the plaintiff sued Mindgeek, the owner and operator of Pornhub.com, and the credit card company, Visa, arguing that Visa's was liable for their participation in the Mindgeek sex trafficking operation. In regard to knowledge, the Court stated:

> If Visa knew MindGeek's sites contained a wealth of child porn and that MindGeek regularly placed ads alongside its videos, facts that are either expressly alleged or clearly implied in the [complaint], then it knew that MindGeek was regularly committing violations

of section 1591(a)(2) by participating in hundreds or thousands of sex trafficking ventures and financially benefiting from such participation. With such knowledge, Visa continued to grant MindGeek the means to financially benefit from its participation in sex trafficking ventures: the Visa payment network. It does not matter that Visa did not know who the eventual victims or primary traffickers would be or whether Visa interacted with or knew of Plaintiff, her videos, or her traffickers. MindGeek's violation of section 1591(a)(2), and Plaintiff's resulting harm, were natural consequences of Visa's alleged ***knowing decision*** to provide the means through which MindGeek could monetize child porn videos, like those featuring Plaintiff.

*Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146, 1163 (C.D.Cal. 2022) (emphasis added). Like Visa, the YouTube Defendants were on notice of the ongoing luring and enticing of children through Onision's channels yet continued to give him the means and encouragement to continue – they were paying him to do so as part of their YPP contract. (PageID.18, 21-23, 51-52 ¶ 101, 120-124, 126, 331-337).

Additionally, YouTube has far more control over Onision's actions than they claim. YouTube Defendants have the ability to demonetize a YPP Partner that breaks their TOS. (PageId.16 ¶ 90). In *Fleites,* the court rejects Visa's argument that they are not liable because they are not involved in Mindgeek's day-to-day operations and Visa does not control how Mindgeek runs its website. The Court instead found that Visa has substantial control over Mindgeek because Visa determines what type of content is "fair game for its payment network." *Id.* at 1156. After Mindgeek was publicly outed for

knowingly hosting illegal content, Visa suspended Mindgeek's merchant privileges, resulting in Mindgeek's removal of a substantial number of illegal videos. *Id.* The Court determined that Visa made the choice to allow Mindgeek to be a merchant on its platform, despite knowing Mindgeek engaged in illegal activity. *Id.* at 1157. Regarding Visa's liability, the Court stated "[w]hen MindGeek crosses the line . . . Visa crack[ed] the whip and MindGeek respond[ed] vigorously.[] Yet, here is Visa, standing at and controlling the valve, insisting that it cannot be blamed for the water spill because someone else is wielding the hose." *Id.* at 1156-57.

Likewise, when Google and YouTube became aware that Onision was violating the TOS, was posting harmful and dangerous content, and was luring and enticing children, (PageID.21-23 ¶¶ 117-127), this was enough to place the YouTube Defendants on notice and provide constructive knowledge of the criminally dangerous environment Onision created through use of the YouTube platform. The YouTube Defendants should have demonetized Onision when this came to their knowledge instead of continuing to profit from his luring and enticement of children. When they finally did demonetize Onision in 2021, they did so because Onision had violated the YPP Partner agreement, and stated that he had engaged in behavior on or off platform that causes harm to the YouTube community. (PageID.52 ¶ 335). After being demonetized, Onision finally began moving to alternatively platforms where

27

he could make money. The YouTube Defendants, like Visa, controlled the money flow for Onision and Lainey, but are claiming they cannot be blamed for the environment they paid him to create.

Notably, had the YouTube Defendants demonetized Onision when they first had constructive knowledge of his conduct, he would have simply been a third-party posting content to their platform and YouTube would have been able to claim CDA 230 immunity. By choosing to continuing monetizing Onision, the relationship changed and they are liable for the profit-sharing relationship the YouTube Defendants created.

Plaintiff has plausibly alleged that the YouTube Defendants were made aware that Onision was luring and enticing children and that his content was harmful, yet they continued to profit-share with him for that same content, allowing the dangerous environment on their platform to continue. As such, they had constructive knowledge of the claims.

## CONCLUSION

Plaintiff hereby request this Honorable Court to deny the YouTube Defendants' Motion to Dismiss and grant such other relief as is just and appropriate.

DATED: June 20, 2023

/s/ Lisa D. Haba
Lisa D. Haba
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Dr., Ste. 207
Longwood, Florida 32779
Telephone: (844) 422-2529
lisahaba@habalaw.com

/s/ James R. Marsh
James R. Marsh
Margaret E. Mabie
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th Floor
New York, New York 10001
Telephone: (212) 372-3030
jamesmarsh@marsh.law
margaretmabie@marsh.law

*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE RE. WORD COUNT**

**NOW COMES** Lisa D. Haba, counsel for Plaintiff, Sarah, and pursuant to LCivR 7.2(b)(i), states that Plaintiff's Brief in Opposition to Defendants Google LLC and YouTube LLC's Motion to Dismiss Complaint contains 6328 words. This brief was written using Microsoft Word 365. As a dispositive motion to involuntarily dismiss an action, this brief conforms with LCivR 7.2(b)(i)'s word count limitation.

DATED: June 20, 2023

*/s/ Lisa D. Haba*
Lisa D. Haba
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Dr., Ste. 207
Longwood, Florida 32779
Telephone: (844) 422-2529
lisahaba@habalaw.com

**PROOF OF SERVICE**

Lisa D. Haba hereby states that she did serve a copy of PLAINTIFF'S

BRIEF IN OPPOSITION TO DEFENDANTS GOOGLE LLC AND

YOUTUBE LLC'S MOTION TO DISMISS COMPLAINT on June 20, 2023

pursuant to Fed. R. Civ. P. 5(d) via the United States District Court for the

Western District of Michigan electronic filing system.

DATED: June 20, 2023

> */s/ Lisa D. Haba*
> Lisa D. Haba
> **THE HABA LAW FIRM, P.A.**
> 1220 Commerce Park Dr., Ste. 207
> Longwood, Florida 32779
> Telephone: (844) 422-2529
> lisahaba@habalaw.com